Jerry **MANNS**, Appellant,

v.

**STATE of Indiana,** Appellee.

No. 284S51.

Supreme Court of Indiana.

Jan. 18, 1985.

James J. Nagy, Munster, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Jerry Manns was convicted by a jury in the Lake County Superior Court of murder and attempted murder. The trial court subsequently sen-

tenced him to thirty-five years imprisonment for murder and to twenty-five years imprisonment for attempted murder, said sentences to run concurrently. Appellant now directly appeals and raises the following two issues:

1. sufficiency of the evidence; and

2. trial court's denial of Appellant's mistrial motion.

The facts adduced during trial show that during the late afternoon of November 5, 1982, Cyril Lee and Jeffrey Holloway observed a red Chevrolet automobile approach Appellant's residence in Gary. Lee testified that he was at Appellant's residence with Holloway to collect money owed to him by Kevin Kilgore, a "very good" friend. Earlier in the day, Lee had confronted Kilgore about his debt which confrontation resulted in an argument. Kilgore told Lee at that time that he had given Lee's money to Appellant. The red car drove by Appellant's house and stopped a short distance away from it in the vicinity of 2167 Washington Street. Lee testified that as he and Holloway walked towards the car, the driver exited, removed a weapon from the vehicle's trunk and passed the weapon to a passenger inside of the car. Appellant and Kevin Kilgore immediately thereafter stepped out of the car with guns drawn and began firing at Lee and Holloway. Lee testified that although he was wounded in the lower part of his right leg, he was able to run from the area. He specifically testified that Kilgore was the one who shot him in the leg and that Appellant chased after him while shooting at him. Lee also testified that he saw Kilgore shoot Holloway three times in the back as Holloway attempted to flee the attack. Lee stated during his testimony on direct examination:

"But to the best of my knowledge, while Kevin [Kilgore] was shooting at me [Appellant] Jerry might have, if he didn't do it, shot Jeff [Holloway]. I don't know."

Lee's direct examination later continued:

"Things happened so fast. Kevin started off the shooting, okay, then [Appellant] Jerry was like backing him up, so it happened one right after another. Kevin started, Jerry was right after, after he started. Maybe if Kevin hadn't shot, Jerry might not have shot, I don't know.

Q. When you say "backing him up," what do you mean?

To make sure that don't nobody leave where they are at, you know, because one person can't shoot three or four people at one time."

Robert Prince testified that he was in a nearby restaurant at the time of these crimes and heard the gunshots. He immediately went outside and observed Holloway laying on the ground with two men standing right by him. The younger of the two men reloaded his gun while the other watched. Holloway subsequently got up and was chased a short distance by the two men before he collapsed. Prince testified that he saw the younger man "stand up over [Holloway] and started shooting down." Prince also testified that he told police that he thought he recognized the older of the two men as a man who lived down the street from him. Prince led the investigating officers to Appellant's residence at 2180 Washington Street. Arvind Kakodkar, a pathologist, testified that he performed an autopsy on Holloway and concluded that Holloway died from lacerations to his brain, right lung and liver.

## I

Appellant first challenges the sufficiency of the evidence by which he was convicted. Specifically, Appellant contends that there was no evidence that he killed Jeffrey Holloway as charged or that he attempted to kill Cyril Lee as charged. With regard to sufficiency of the evidence questions, this Court will consider only that evidence which is favorable to the State with all reasonable inferences therefrom and will neither reweigh the evidence nor determine the credibility of witnesses. If there is substantial evidence to support the jury's conclusion that Appellant was guilty beyond a reasonable doubt of murder and

attempted murder, then the jury's verdicts will not be disturbed. *Smith v. State,* (1984) Ind., 465 N.E.2d 1105, *reh. denied.* Moreover, it is well-established that an accomplice is criminally responsible for everything done by his confederate which is a probable and natural consequence of their common plan. *Ausley v. State,* (1983) Ind., 452 N.E.2d 926; *See also* Ind.Code § 35–41–2–4 (Burns 1979). Accordingly, we find the evidence in the instant case sufficient to support the jury's judgment that Appellant acted in concert with another to perpetrate these crimes and the evidence therefore is sufficient to support Appellant's convictions for murder and attempted murder.

## II

Appellant next argues that the trial court erred by denying his motion for a mistrial made during the cross-examination of State's witness James Thompson, a Gary police officer. The exchange giving rise to this issue happened as follows:

"[Thompson] All the names mentioned were run through the B. of I. and I also went to Lake Station and ran some names.

[Defense Counsel] Did you think about running records through Lake County?

[Thompson] Our records would be the same.

[Defense Counsel] Not necessarily.

BY [The Prosecutor]: Objection.

BY THE COURT: Sustained, comments of Counsel.

BY [Defense Counsel]: Do you understand in your B. of I. the only records your B. of I. has is someone who was arrested in Gary?

[Thompson] In fact, that's not true, and I could indicate that by the defendant in this case's record, which I obtained from our B. of I.

BY [Defense Counsel]: I move for a mistrial.

BY THE COURT: I would admonish the jury to disregard that last statement, it was not responsive to the question,

and give it no weight. I would like to see Counsel."

After admonishing the jury as indicated, the trial court took Appellant's mistrial motion under advisement and subsequently denied it at the conclusion of all of the evidence. Appellant now claims that Thompson's remark was an "evidentiary harpoon" causing such prejudice that he was denied a fair trial. Appellant relies solely upon *White v. State,* (1971) 257 Ind. 64, 272 N.E.2d 312.

■■■ A trial judge has the discretion to determine whether or not to grant a mistrial motion. Accordingly, a defendant must demonstrate that he was placed in a position of grave peril to which he should not have been subjected in order to persuade a reviewing court that the trial judge abused his discretion by denying the mistrial motion. In addition, a reviewing court normally will not find reversible error when a mistrial motion is denied if the trial judge has admonished the jury to disregard the objectionable conduct during trial since the admonition is presumed to sufficiently protect the defendant's rights and to remove any error created by the objectionable testimony. *Wallace v. State,* (1983) Ind., 453 N.E.2d 245, *reh. denied.*

■■■ In the instant case, the objectionable response by Officer Thompson was not deliberately induced. In fact, the response was made to a question posed by Appellant's own trial counsel. This fact clearly distinguishes Appellant's case from *White, supra,* wherein the objectionable testimony was deemed to have been deliberately induced by the prosecutor. Moreover, the suggestion of Appellant's past criminal conduct made by Thompson's remark was slight as nothing was said which definitively indicated that Appellant had been convicted previously of any crime. The fact that the trial court *sua sponte* admonished the jury to disregard Thompson's statement also is significant because, as stated above, such an admonition is presumed to cure any error created by Thompson's objectionable testimony. Considering the vague nature of Thompson's response, the

trial court's immediate admonition to the jury, the fact that the objectionable response was not deliberately induced and the substantial evidence showing Appellant's guilt, we find that Thompson's remark did not place Appellant in a position of grave peril. The trial court therefore did not err by denying Appellant's mistrial motion.

Finding no error, we affirm the trial court.

GIVAN, C.J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.