Jim MARSILLETT, Jr., Appellant,

v.

STATE of Indiana, Appellee.

No. 484S159.

Supreme Court of Indiana.

July 22, 1986.

John P. Geberin, Bowser, Geberin & Dalton, Warsaw, for appellant.

Linley E. Pearson, Atty. Gen., Latrielle Wheat, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

Appellant Jim Marsillett, Jr., was convicted of theft, a class D felony, Ind.Code § 35-43-4-2 (Burns 1979 Repl.), and was also found to be an habitual offender, Ind. Code § 35-50-2-8 (Burns 1979 Repl.). The court imposed a sentence of thirty-two years, the presumptive term for theft, plus thirty years because of the recidivist finding.

Appellant filed a pro se motion to correct error raising twenty-seven issues; counsel filed a separate motion alleging twelve grounds for error. We have consolidated these issues for purposes of discussion as follows:

1) whether the evidence is sufficient to sustain appellant's theft conviction;

2) whether the trial court must enter the judgment of conviction for a class D felony prior to commencement of habitual offender proceedings;

3) whether the prosecutor arbitrarily used his discretion to file the habitual offender count to coerce appellant to forego his constitutional rights;

4) whether the Indiana habitual offender statute violates a defendant's constitutional rights;

5) whether a sentence enhancement of thirty years constitutes vindictive justice;

6) whether the trial court must consider mitigating circumstances when it imposes the presumptive term;

7) whether the trial court erred by denying appellant's motion for mistrial;

8) whether trial counsel's alleged ineffective assistance denied appellant a fair trial;

9) whether one juror's alleged bias denied appellant of a trial by an impartial jury;

10) whether the victim's in-court identification of defendant was tainted by the prosecutor's leading questions;

11) whether the prosecutor's comments during closing arguments constituted fundamental error;

12) whether the court erred by communicating with the jury in defendant's absence, and

13) whether the trial court erred by allowing the jury to view documentary evidence during deliberations.

Several of these questions have been settled by this Court on grounds identical to those argued in this appeal. Reviewing a recent appeal from the denial of post-conviction relief, we held that the Public Defender is not obligated to raise on appeal from a denial for post-conviction relief every issue that the petitioner requests be raised when the issue is clearly not a proper subject for post-conviction relief or is deemed to be a frivolous issue. *Music v. State* (1986), Ind., 489 N.E.2d 949. In doing so, we acknowledged a U.S. Supreme Court decision which indicated that an indigent defendant does not have a constitutional right to compel appointed counsel to raise issues which counsel, in his professional judgment, determines should not be presented. *Jones v. Barnes* (1983), 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987. In *Jones*, Chief Justice Burger wrote that the Supreme Court:

recognized the superior ability of trained counsel in the 'examination into the record, research of the law, and marshalling of arguments on [the appellant's] behalf.' *Douglas v. California* [372 U.S. 353, 9 L.Ed.2d 811, 83 S.Ct. 814 (1963)]

\* \* \* \* \* \*

[E]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.

\* \* \* \* \* \*

A brief that raises every colorable issue runs the risk of burying good arguments—those that, in the words of the great advocate John W. Davis, 'go for

the jugular,'—in a verbal mound made up of strong and weak contentions.

*Jones,* 463 U.S. at 751, 753, 103 S.Ct. at 3312, 3313, 77 L.Ed.2d at 993, 994.

The case at bar is the definitive example which underscores these decisions. Recitation of long-settled issues does nothing to enhance consideration of whatever stronger grounds an appellant may have for relief.

These are the facts which tend to support the trial court's judgment. In July of 1983, appellant entered into a contract with Leander Rose to paint his house. The original contract price was $1,100, but the parties later agreed to add $100 for the purchase of supplies. The contract was written by appellant because neither Leander Rose nor his wife, Nova Rose, were able to read or write. Appellant also drafted a $1,200 check on Rose's account in payment for the work, and Mr. Rose signed the check.

While appellant was working on the job, he asked Mr. Rose for a ten dollar loan, saying that he needed the money for gas expenses incurred traveling to work. Once again appellant filled out the information necessary for the check, and Mr. Rose signed it. Mr. Rose was surprised when he found out later that his cancelled check indicated that the amount was $1,000 rather than $10. The date, payee (appellant), and payor (Rose) were written in black ink while the dollar amounts were written in blue ink. The information charged appellant with the theft of the difference, $990.

Nova Rose, who was present when her husband and appellant agreed on the painting project, identified appellant in court as the man who contracted with her husband. She also testified about a discussion she had with appellant about a second contract to work on the interior of the house. This project was contingent upon Mrs. Rose's plan to sell her trailer, which never came to pass. Mr. Rose also testified that appellant was never hired under a second contract.

## I. Sufficiency of the Evidence

Appellant argues that the trial court erred by denying his motion for a directed verdict because the evidence is insufficient to sustain his conviction for theft. Specifically, he claims that the State did not prove beyond a reasonable doubt either unauthorized control or intentional deprivation, both elements of the offense of theft.[1] He maintains that the State did not prove that his receipt of the $990 from Leander Rose was unauthorized. He also contends that he received this money pursuant to a second contract. Finally, appellant claims he did not deprive Rose of the use of his money because Rose would have received the benefits of this contract.

As a court of review, we neither reweigh the evidence nor judge the credibility of witnesses. Rather, we consider only that evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact, then the verdict will not be overturned. *McBrady v. State* (1984), Ind., 460 N.E.2d 1222. The trial court did not err by denying appellant's motion for a directed verdict because the evidence is clearly sufficient to sustain his conviction.[2]

Appellant first claims that his control over the money was authorized. Unauthorized control is defined to include situations where control over the property of another person is exerted without the other person's consent, or in a manner or to an extent which exceeds the scope of that

1. A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a class D felony. Ind.Code § 35–43–4–2 (Burns 1979 Repl.).

2. We note, however, that the trial court's ruling on the motion for directed verdict is not subject to review on appeal because Marsillett introduced evidence on his behalf after the motion was denied. *Dziepak v. State* (1985), Ind., 483 N.E.2d 449; *Buck v. State* (1983), Ind., 453 N.E.2d 993.

person's consent. Ind.Code § 35–43–4–1 (Burns 1979 Repl.). In this case, defendant was authorized by Leander Rose to write a check for ten dollars. Appellant exceeded the scope of Rose's consent by writing the check for one thousand dollars instead.

Appellant also claims there was no intentional deprivation of the use of Rose's property because he would have received the benefits when the second contract was completed. The intent to deprive the owner of his property may be inferred from the unauthorized possession of the property. *Tuggle v. State* (1969), 253 Ind. 279, 252 N.E.2d 796. The jury could infer that defendant intended to deprive Leander Rose of the $990 which was in excess of the $10 check which appellant was authorized to write.

## II. Judgment of Conviction

■ Appellant argues that the trial court erred by proceeding to the habitual offender phase of the bifurcated trial without first ordering and reviewing a presentence report and imposing sentence on the present offense. He maintains the trial court should have determined whether to enter judgment for a class D felony or a class A misdemeanor prior to the commencement of the recidivist proceedings.

After the jury returned its verdict for a class D felony, the prosecutor and defense counsel discussed this issue in the judge's chambers. Appellant requested the court to delay the habitual offender proceedings until a presentence report could be drafted and reviewed by the court.

The trial court may enter a judgment of conviction for a class A misdemeanor and sentence accordingly when the jury has found the defendant guilty of a class D felony. Ind.Code § 35–50–2–7(b) (Burns 1979 Repl.). This statutory provision does not require the court to make this decision prior to the commencement of habitual offender proceedings. Rather, the court must state its reasons for the choice made *whenever* it exercises the power granted.

Appellant cites a decision of this Court suggesting that the "better practice" is for the trial court to determine whether to withhold judgment for a class D felony and enter judgment for a class A misdemeanor after considering the presentence report and arguments of counsel, but prior to the habitual offender proceedings. *Collins v. State* (1981), Ind., 415 N.E.2d 46. This procedure would avoid subjecting the defendant unnecessarily to the recidivist phase of the trial. It does have certain other disadvantages (such as reassembling a jury three or four weeks later) and we have held that the trial court's failure to follow this procedure does not constitute reversible error. *Funk v. State* (1981), Ind., 427 N.E.2d 1081.

Appellant also argues that it is reversible error to impose judgment of the theft conviction before receiving the presentence report. He maintains that the trial court implicitly decided to impose judgment as a felony when it denied his motion to delay proceedings and continued with the habitual offender phase. The facts do not support appellant's contention. The record shows that appellant was found guilty of theft by a jury on the morning of November 23rd. The habitual offender phase commenced shortly after the jury's verdict. The jury found defendant to be an habitual offender that same afternoon. On December 6th the presentence report was filed. On December 8th, after the parties discussed corrections to the presentence report at the sentencing hearing, the trial court entered judgment for theft as a class D felony and sentenced defendant accordingly.

When the jury verdict was rendered the court did not have a presentence report in its possession. It would appear the judge postponed entering judgment until after he could review the presentence report and listen to the arguments of counsel. Ind. Code § 35–38–1–8 (Burns 1979 Repl.). To delay the habitual offender proceedings in this case would have required the court to dismiss the jury and then recall it after the presentence report had been drafted. Marsillett contends that proceeding to the habitual offender phase before sentence is

imposed on the present offense prejudiced him because it was improbable the judge would ignore the results of the habitual offender phase when imposing judgment. However, the presentence report would have informed him about Marsillett's prior criminal record anyway.

### III. Prosecutorial Discretion

Appellant argues that our habitual offender statute permits unlimited prosecutorial discretion in the decision to file habitual offender counts. Marsillett maintains that the prosecutor applied this statute against him arbitrarily because the State tried to coerce him into waiving his constitutional rights during plea negotiations.

Prior to trial, the prosecutor offered to forego filing of the habitual count if defendant pleaded guilty to theft as a class D felony and made restitution. The defendant counteroffered that he would make full restitution if the State agreed to reduce the charge to a class A misdemeanor. The State refused.

■ This Court has previously held that the prosecutor's discretionary use of the habitual offender statute in plea negotiations does not violate due process. As part of plea negotiations, a prosecutor may offer to forego filing habitual offender charges against a defendant who is eligible to be so treated. If negotiations break down, the filing of the charge does not violate due process. Rather, "the prosecutor's conduct was simply a justifiable exploitation of legitimate bargaining leverage." *McMahan v. State* (1978), 269 Ind. 566, 569, 382 N.E.2d 154, 156. *Accord, Bordenkircher v. Hayes* (1978), 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604.

### IV. Constitutionality of Recidivist Statute

■ Appellant argues the habitual offender statute is unconstitutional on the following bases:

(1) The failure to prescribe one jury to hear the principal offense and another jury to determine the recidivist count violates his constitutional right to a public trial before an impartial jury.

(2) The enhanced sentence constitutes an increase in punishment which violates the double jeopardy clause.

(3) The mandatory enhanced sentence of thirty years constitutes cruel and unusual punishment when prior convictions were non-violent, property offenses.

(4) The mandatory nature of the enhancement violates the equal protection clause because the sentencing court has wide latitude in the sentences imposed for similar offenses.

Appellant acknowledges that case law is contrary to his position but requests this Court to reconsider these issues.

Under the doctrine of *stare decisis*, this Court adheres to a principle of law which has been firmly established. Important policy considerations militate in favor of continuity and predictability in the law. Therefore, we are reluctant to disturb longstanding precedent which involves salient issues. *Teeters v. City National Bank of Auburn* (1938), 214 Ind. 498, 14 N.E.2d 1004. Precedent operates as a maxim for judicial restraint to prevent the unjustified reversal of a series of decisions merely because the composition of the Court has changed. *Grubbs v. State* (1865), 24 Ind. 295.

Once the validity of a statute has been frequently recognized by this Court and the statute declared to be constitutional, we will not reconsider the constitutionality of that statute unless there are compelling reasons to do so. *Kassabaum et al v. Bd. of Finance* (1939), 215 Ind. 491, 20 N.E.2d 642; *State ex rel. Monroe Gravel Road Co. v. Stout* (1878), 61 Ind. 143. However, this Court will overrule a decision or a series of decisions which are clearly incorrect due to a mistaken conception of the law or other judicial error. *Martin v. State* (1985), Ind., 480 N.E.2d 543; *Bd. of Comm'rs of Jasper County v. Allman* (1895), 142 Ind. 573, 42 N.E. 206. Still, a rule which has been deliberately declared should not be disturbed by the same court absent urgent reasons and a clear manifes-

tation of error. *Moore-Mansfield Construction Co. v. Indianapolis, Newcastle, and Toledo Railway Co.* (1912), 179 Ind. 356, 101 N.E. 296.

Appellant has not presented cogent reasons for us to reconsider the constitutionality of the habitual offender statute. He merely repeats grounds offered by appellants under prior cases. We decline the invitation.

### V. Vindictive Justice

■ Appellant argues that imposition of a thirty-two year sentence for the theft of $990 constitutes vindictive justice rather than reformation as required by Article I, § 18 of the Indiana Constitution. This Court has previously held that the thirty year enhancement prescribed by the recidivist statute does not constitute vindictive justice. *Wise v. State* (1980), 272 Ind. 498, 400 N.E.2d 114. When a defendant is found to be an habitual offender, the trial court enhances the sentence for the principal offense by adding thirty years. This enhancement arises because the defendant has twice been convicted of two prior unrelated felonies. The purpose of this enhancement is to penalize more severely those persons whom prior sanctions have failed to deter from committing felonies. *Graham v. State* (1982), Ind., 435 N.E.2d 560.

### VI. Mitigating Circumstances

Appellant argues the trial court erred by not considering mitigating circumstances.

■ The trial court imposed the presumptive term of two years for the theft conviction of a class D felony. Ind.Code § 35–50–2–7 (Burns 1979 Repl.). The trial court is not required to state reasons for the imposition of a sentence or to state mitigating factors when it imposes the presumptive term. *Hammons v. State* (Ind., 1986), 493 N.E.2d 1250.

■ Appellant further argues that it is not clear from the record whether the court considered it had the power to suspend part of the thirty year enhancement under Ind.

Code § 35–50–2–2 (Burns 1979). This statutory provision pertains only to the suspended sentences for felonies generally. The statute which permits the trial court to reduce the fixed enhancement of thirty years upon an habitual offender determination is Ind.Code § 35–50–2–8(c) (Burns 1979 Repl.). However, this provision for sentence reduction was inapplicable to this case because ten years had not elapsed between Marsillett's most recent felony conviction in 1982 and the commission of this felony in 1983.

### VII. Motion for Mistrial

■ Appellant argues that his motion for mistrial should have been granted because defense counsel refused to call a witness whose testimony could have resulted in an acquittal.

The trial judge has great discretion to determine whether to grant a motion for mistrial. *Wagner v. State* (1985), Ind., 474 N.E.2d 476. To show that the trial court has abused this discretion, appellant must demonstrate that he was placed in a position of grave peril to which he should not have been subjected. *Manns v. State* (1985), Ind., 472 N.E.2d 918.

The substance of the testimony of the witness in question, James Roberts, is contained in an affidavit. Roberts recited that he was hired by appellant to paint Leander Rose's home. He stated he was present on the afternoon when the second contract was discussed and drafted, and the check for $1,000.00 executed. Roberts' affidavit was merely cumulative of similar testimony presented by two other defense witnesses. Appellant was not placed in a position of grave peril.

### VIII. Ineffective Assistance of Counsel

Appellant argues that trial counsel's ineffective assistance denied him a fair trial. He maintains trial counsel:

(1) failed to call a crucial witness to testify on his behalf,

(2) failed to remove a biased juror,

(3) failed to investigate all the facts, and

(4) waived appellant's Fifth Amendment rights by permitting testimony about his polygraph examination.

■ To succeed on an ineffective assistance of counsel claim defendant must satisfy the performance-prejudice standard enunciated in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Appellant must show that counsel did not give reasonably effective assistance as measured by the prevailing professional norms and that counsel's deficient performance not only prejudiced the defense but undermined the reliability and fairness of the proceeding. *Stanley v. State* (1985), Ind., 479 N.E.2d 1315.

When considering such claims, this Court will not speculate about what may have been the most advantageous strategy in particular cases. Isolated poor strategy, inexperience, or bad tactics do not necessarily constitute ineffective assistance. Appellant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Murphy v. State* (1985), Ind., 477 N.E.2d 266.

*Witness*

■ Appellant claims that trial counsel's assistance was ineffective because he refused to let a prospective defense witness testify. (See Issue VII, *supra*). As a general proposition, deciding whether to call a particular witness to testify on behalf of the defendant is a matter within trial counsel's strategy. *McCann v. State* (1983), Ind., 446 N.E.2d 1293. Absent a clear showing of prejudice, this Court will not declare counsel ineffective for failure to call a certain witness. Counsel's assistance is not ineffective for failing to call a witness who would have offered only cumulative testimony.

*Biased Juror*

■ Appellant maintains that trial counsel was ineffective for failing to challenge a biased juror. During voir dire, prospective jurors were asked by the court whether they knew any of the participants in the trial. Juror Jill Thallemer responded

that she knew the Roses and the Marsilletts. Thallemer indicated she had not seen the Roses for some time and that she would not "automatically believe what one person says over what somebody else says."

Challenging a juror is a matter of trial tactics. *Bennett v. State* (1984), Ind., 470 N.E.2d 1344. Failure to remove a juror who had some relationship to the victim and the defendant, without more, does not demonstrate that counsel was deficient in representing appellant's interests. *Cf. King v. State* (1984), Ind., 467 N.E.2d 726.

*Investigation*

■ Appellant claims that the verdict would have been different had proper investigation been made and all the facts revealed. At the sentencing hearing defendant testified that there were receipts for the purchase of supplies (i.e., electrical wiring, plug outlets, dry wall paste, and plaster) which he wanted introduced into evidence. However, the record does not indicate whether appellant requested that his trial counsel offer these receipts into evidence.

The failure of defense counsel to investigate facts is not error when the investigation would not have revealed evidence favorable to appellant's defense. *Clay v. State* (1983), Ind., 457 N.E.2d 177. This Court will not find counsel ineffective for failure to investigate facts absent a showing that the proper functioning of the adversarial process was undermined. *Vickers v. State* (1984), Ind., 466 N.E.2d 3. In the case at bar, there was no showing that the face of the receipts indicated the intended use of the material purchased. A receipt for the purchase of commonly used materials does not indicate that appellant purchased these materials pursuant to a second contract which he alleges existed.

*Polygraph Examination Testimony*

■ Marsillett argues that trial counsel waived his Fifth Amendment rights by permitting a State witness to testify that he gave deceptive answers to several key questions on the polygraph examination.

Officer Mark Secor, a polygraph examiner, testified that in his opinion the polygraph examination indicated that Marsillett did not tell the truth when he was questioned about this crime. Secor identified State's Exhibit No. 4 as the polygraph waiver which appellant, defense counsel, and the prosecutor signed. The waiver form indicated that the results of the examination could be used in court on defendant's behalf or as evidence against him. The form further recited that the polygraph examiner could testify in court about the test. In addition, the form recited that defendant had a right to remain silent, that he had a right to refuse the test, and that he had the right to the advice and consultation of counsel prior to signing the document.

Generally, the results of polygraph examinations of a witness or a party are inadmissible in a criminal proceeding absent a waiver or stipulation by the parties. *Evans v. State* (1986), Ind., 489 N.E.2d 942. When a defendant executes a valid waiver prior to a polygraph examination, the results of that examination are admissible. *Williams v. State* (1986), Ind.App., 489 N.E.2d 594. We will not find counsel to be ineffective merely because, in hindsight, defendant regrets agreeing to the introduction of polygraph results at his trial.

### IX. *Impartial Jury*

Besides arguing that counsel rendered ineffective assistance by failing to challenge for cause a juror who knew the victims and the Marsillett family, appellant claims that this juror's presence on the panel denied him his right to a fair trial by an impartial jury.

The function of voir dire is to ascertain whether a prospective juror can render a fair and impartial verdict in accordance with the law and the evidence. *Murphy v. State* (1984), Ind., 469 N.E.2d 750. A juror's casual acquaintance with the crime victim alone does not render the juror biased, particularly when any relationship with the crime victim is remote in time. *Shepard v. State* (1980), 273 Ind. 295, 404 N.E.2d 1.

### X. *Identification of Defendant*

Appellant argues that he was denied a fair trial because the prosecutor's leading questions tainted the victim's testimony identifying him as the perpetrator. The following colloquy transpired between Leander Rose, age 74, and the prosecutor during direct examination:

Q And do you recognize [Jim Marsillett]? Can you identify Mr. Marsillett if you see him?

A Oh, yeah (yes).

Q Do you see him here in Court today?

A (no response)

Q Do you understand what I'm asking you, Mr. Rose?

A Huh?

Q Do you understand what I'm asking you? Do you see Jim Marsillett in the Courtroom?

A I can't recognize him from here.

Q Your—your eyes are hard for you to see good?

A Yeah (yes) pretty bad. That's the reason I couldn't get a driver's license this year.

Q Pardon me.

A That's the reason I—they sent me down for a driver's license and I couldn't see.

Q Okay. Do you want to get down from the witness stand and kind of look at the people here and see if you see Mr. Marsillett here? Do you want to step down here and take a look at the people? Mr. Rose, do you want to come on down and look at this and see if you see Mr. Marsillett here?

A Well, I don't know if I'd recognize him now or not.

Q Maybe you don't—are you hearing me? Mr. Rose, if you—if you can't see from here to there very well.

A (nods in the affirmative)

Q Okay, why don't you get down from the witness stand and take a look at us and see if you see Mr. Marsillett.

A (Witness leaves the witness stand and views the audience and the parties at

counsel tables.) I recognize this fellow. (Points to a gentlemen in the audience.)

Q Is that Mr. Marsillett here?

A I can't tell. It don't look like him. He's changed looks.

Q Okay.

A I wouldn't recognize him if I met him on the street.

Q Okay. But that's Mr. Marsillett that you're looking at right here, is that what you're saying?

A That's him. I guess it's him.

Q Okay. Why don't you go ahead and go back and have a seat up there.

A I recognize his daddy. (Referring to the man in the audience.)

Q All right.

(Witness returns to the witness stand.)

The issue disputed at trial was not the identity of a perpetrator, but whether appellant was authorized to write the second check for one thousand dollars. Mr. Rose testified that he authorized appellant to write a check for the ten dollar loan. The Roses testified that they had contemplated and discussed a second contract with appellant but never entered into it. Appellant maintained that the second check represented a downpayment on the second contract.

In any event, prior to the exchange quoted above, Mrs. Rose testified that she was present when her husband discussed the first contract with Marsillett and identified appellant in court as the man who entered into a contract with her husband. With this corroborating evidence before it, the jury was entitled to conclude that Marsillett was the person who had committed the crime, notwithstanding the tenuous identification made by Leander Rose.

### XI. Closing Arguments

Appellant argues that during closing arguments the prosecutor made the following improper references to defendant's failure to explain or present evidence on important factual issues:

(1) *Comments on Evidence Presented:* The prosecutor commented on defend-

ant's truthfulness by reciting questions posed during the polygraph examination and by referring to the examiner's opinion that defendant's answers were false.

(2) *Credibility of Defense Witness:* The prosecutor suggested that the defendant's wife, who testified that they purchased supplies, such as paint, may not be credible because there were no receipts introduced into evidence to substantiate her testimony.

(3) *Failure to Provide Explanation:* The prosecutor commented that defendant did not offer any explanation as to why the disputed check was written in two colors of ink.

To determine whether the prosecutor's statements during closing argument constituted misconduct, this Court engages in the dual analysis enunciated in *Maldonado v. State* (1976), 265 Ind. 492, 355 N.E.2d 843. We first determine whether case law and the disciplinary rules of the Code of Professional Responsibility indicate the prosecutor engaged in misconduct. If so, then we must determine whether the misconduct, under all the circumstances, placed the defendant in a position of grave peril to which he should not have been subjected. The gravity of the peril is determined by considering the probable persuasive effect of the misconduct on the jury's decision, not the degree of impropriety of the conduct.

As a general proposition, the prosecutor must confine closing argument to comments based upon the evidence presented in the record. The prosecutor may argue both law and facts and propound conclusions based upon his or her analysis of the evidence. *Cheney v. State* (1985), Ind., 486 N.E.2d 508. It is proper to state and discuss the evidence and all reasonable inferences to be drawn therefrom, provided the prosecutor does not imply personal knowledge independent of the evidence. *Brumfield v. State* (1982), Ind., 442 N.E.2d 973. The prosecutor's statements on the polygraph examination merely summarized evidence presented during the trial and in-

dicated that the prosecutor agreed with the polygraph examiner's conclusions.

 The prosecutor's comments concerning the credibility of appellant's wife also were proper. The prosecutor may comment on the credibility of witnesses during closing arguments, provided the assertions are based upon reasons which arise from the evidence. *Beard v. State* (1981), Ind., 428 N.E.2d 772; *Stanley v. State* (1980), 273 Ind. 13, 401 N.E.2d 689. Any weak or illogical reasons advanced by the prosecutor for disbelieving the witness are matters for the jury to weigh. *Hubbard v. State* (1974), 262 Ind. 176, 313 N.E.2d 346. It is improper for the prosecutor to assert that a witness should not be believed when the assertion is based upon evidence not presented to the jury. *Burns v. State* (1979), 270 Ind. 512, 387 N.E.2d 442; *Craig v. State* (1977), 267 Ind. 359, 370 N.E.2d 880. In the case at bar, the prosecutor merely commented on the uncorroborated nature of the wife's testimony, a fact evident from the record.

 Finally, the prosecutor's comments on defendant's failure to explain why the disputed check was written in two colors was proper. The State may comment on the lack of an explanation for otherwise incriminating evidence against a defendant. *Bailey v. State* (1982), Ind.App., 438 N.E.2d 22.

### XII. Jury Communication

Appellant argues the trial court violated his right to be present at every stage of the proceedings by communicating with the jury in his absence.

Appellant and defense counsel filed affidavits with the trial court to establish the factual basis for this claim. The affidavits indicate that during deliberations the jury posed two questions to the court. Apparently, the written questions were submitted to the bailiff by the jury foreman. One question asked to hear a replay of part of the transcript. This request was denied by the court. Trial counsel did not recall the substance or disposition of the second question posed by the jury. However, counsel stated in his affidavit that he was present in court each time the jury made a request and was able to sufficiently represent the interests of the defendant. After the trial, defense counsel advised defendant of these jury communications.

 When jurors request additional guidance from the court, the proper procedure is for the judge to notify the parties so they may be present in court before the judge communicates with the jury. The judge should inform the parties of his proposed response to the jury. *Averhart v. State* (1984), Ind., 470 N.E.2d 666.

Communications between the judge and deliberating jury in defendant's absence are forbidden, but such communications do not constitute *per se* grounds for reversal. *Denton v. State* (1983), Ind., 455 N.E.2d 905. An inference of prejudice arises from an *ex parte* communication and this inference creates a rebuttable presumption that error has been committed. *Harris v. State* (1967), 249 Ind. 681, 231 N.E.2d 800. If this inference is rebutted, the error is deemed harmless. To determine whether the court's communication to the jury is improper, we evaluate the nature of the communication to the jury and the effect it might have had upon a fair determination. *Foster v. State* (1977), 267 Ind. 79, 367 N.E.2d 1088.

 In the case at bar, the first communication was harmless error. When the trial judge merely responds to a jury question by denying their request, any inference of prejudice is rebutted and the error, if any, is harmless. Appellant did not adequately sustain his burden of establishing the error, if any, resulting from the second communication. Though a court's communication with the jury in defendant's absence creates a rebuttable presumption of prejudice, appellant still carries the burden to present the substance of the communication on appeal. The state of the record is that the jury made an inquiry; whether the judge responded does not appear. This is hardly a basis for setting aside a jury verdict.

*XIII. Documentary Evidence Permitted During Jury Deliberations*

Appellant argues the trial court erred by allowing documentary evidence into the jury room. Appellant filed an affidavit with the trial court which indicated that the checks were sent to the jury during deliberations.

The trial judge is imbued with discretion to determine whether the jury should view an exhibit during deliberations. *Mulligan v. State* (1986), Ind., 487 N.E.2d 1309; *Jackson v. State* (1980), 274 Ind. 297, 411 N.E.2d 609. The following criteria are considered by the court in the exercise of this discretion:

(1) Whether the material will aid the jury in a proper consideration of the case;

(2) Whether any party will be unduly prejudiced by submission of the material, and

(3) Whether the material may be subjected to improper use by the jury. *Thomas v. State* (1972), 259 Ind. 537, 289 N.E.2d 508.

This Court has previously held that a jury may examine checks during deliberations in a forgery prosecution when there is only a suggestion of improper use by the jury and the issues presented illustrate the necessity of the jury examining the documents. *Golden v. State* (1985), Ind., 485 N.E.2d 51. Similarly, we find that the examination of the checks would aid the jury in a proper consideration of this case.

Judgment affirmed.

GIVAN, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.