Willie Richard Clifford YOUNGBLOOD, Appellant (Defendant below),

v.

STATE of Indiana, Appellee (Plaintiff below).

No. 385 S 120.

Supreme Court of Indiana.

Nov. 24, 1987.

Richard Walker, Anderson, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant–Appellant Willie Richard Clifford Youngblood was found guilty by a jury in the Madison Superior Court Division I of carrying a handgun without a permit, a class D felony; professional gambling, a class D felony; and unauthorized dealing in alcoholic beverages, a class B misdemeanor. Appellant was also found by the jury to be an habitual criminal. The trial court sentenced Appellant to two years imprisonment for the conviction of carrying a handgun without a permit, which he enhanced by thirty (30) years on the finding of habitual offender; two (2) years imprisonment for professional gambling; and six (6) months imprisonment for unauthorized dealing in alcoholic beverages. All sentences were ordered to be served concurrently.

Appellant raises five issues in this direct appeal:

1. denial of Appellant's motion for change of venue;

2. defect in the charging indictment;

3. improper admission of evidence relating to the death of Walter Goree;

4. sufficiency of the evidence regarding the carrying of a handgun without a license; and

5. sufficiency of evidence to sustain the habitual offender finding.

The facts show that Appellant Youngblood, Kern Peak, Roy Goree, and his brother, Walter Goree, formed the "totally together club." The purpose of the club was to sponsor social gatherings in which patrons were provided the opportunity to gamble and buy alcoholic beverages. The members of the club contemplated making a profit by charging a cover charge, selling alcoholic beverages to the patrons and providing gambling such as dice, poker, and skin games, raking a certain percentage from the "pots" of these games. In the instant case, the club members paid Jim Hendricks, owner of the El Bucko Club in Anderson, Indiana, $100.00 to rent the club for the evening of December 23. Patrons paid a cover charge of $2.00 to be admitted to the club. The members sold alcoholic beverages to the patrons at the price of $1.00 for a beer, and $2.00 for a mixed alcoholic drink. The members had no permit to sell alcoholic beverages. The members also ran the various gambling games in the establishment. Near the end of the event, Appellant and Walter Goree engaged in an argument concerning the amount of money collected from the gambling ventures. Goree accused Appellant of holding back some of the money made in the skin game, and pulled a gun, threatening Appellant. Appellant then pulled a gun he had in his belt. Shots were exchanged, and Walter Goree was fatally wounded. Appellant was not charged with causing the death of Walter Goree.

## I

■ Appellant claims the trial court erred by denying his motion for change of venue based upon publicity which had been accorded the incident by the local media. During a hearing on the motion, the only evidence presented by Appellant consisted of articles from local newspapers and radio news releases which merely reported the facts surrounding the case. Appellant now offers nothing evidencing bias or prejudice of the jurors. The record does not contain a transcript of the voir dire examination nor does Appellant infer that such a transcript would reveal evidence of bias or prejudice of any juror because of the articles. The record does show that on two occasions during the trial, the trial judge questioned the jury as to whether they had heard media accounts of the trial. The judge received negative responses. There is therefore no basis for finding the trial court erred by denying Appellant's motion. *Harris v. State* (1985), Ind., 480 N.E.2d 932, 935; *Sills v. State* (1984), Ind., 463 N.E.2d 228, 233.

## II

■ Appellant claims the trial court committed reversible error by allowing the State to proceed on an amended grand jury indictment. The original indictment charging Appellant with carrying a handgun without a permit, professional gambling,

and unauthorized dealing in alcoholic beverages was returned by the grand jury, signed by the foreman of the grand jury, endorsed a true bill and signed by the prosecuting attorney. On the day of trial, the prosecuting attorney filed what was captioned an amended indictment which contained the same charges as the original.

Although the briefs are not helpful to the Court in this regard, an examination of the record reveals that the only changes made by the prosecutor in the amended indictment are the addition of several witnesses and the excising of language in the original charge of carrying a handgun without a permit, stating that Appellant had previously been convicted of a felony. Although this amended indictment did not carry the signature of the foreman of the grand jury, it did have the printed name of the foreman. More importantly, the amended indictment was properly endorsed and approved by the prosecuting attorney. Appellant made no objection to this amended filing and raises the question for the first time in his motion to correct error.

Appellant claims the issue constitutes fundamental error and was not waived by failure to timely object, citing *Walker v. State* (1968), 251 Ind. 432, 241 N.E.2d 792. *Walker* does not support Appellant's contention. Walker was charged with murder. Indiana law in 1968 provided that prosecution for the offense of murder could be instituted only by indictment, which was found to be jurisdictional. *Walker*, 251 Ind. at 435, 241 N.E.2d at 794. In *Walker*, after the court quashed the original indictment, the prosecuting attorney filed an amended indictment without resubmitting the cause to the grand jury. The amended indictment therefore did not contain the endorsement of the foreman of the grand jury, a declaration that the grand jury returned a true bill, or the signature and approval of the prosecuting attorney. It was also provided by statute in 1968 that when an indictment or affidavit was quashed the court "shall direct the case to be resubmitted to the grand jury which found the indictment, or another grand jury, or the prosecuting attorney may file a proper affidavit against the defendant,

charging him with the offense." *Walker*, 251 Ind. at 436, 241 N.E.2d at 794. Only a grand jury could charge Walker with murder. Since this was not done, the court did not have jurisdiction of the defendant and the judgment of guilty of murder was void. Such is not the case here.

Here, the prosecuting attorney had an option to submit the charges to a grand jury, but he was not required to do so. The prosecuting attorney was authorized to file the charges by information. The amended charges filed here were properly endorsed by the prosecuting attorney and did not require the approval of the grand jury. The fact that the instrument was entitled "amended indictment" did not change the body and the substance of it. Any shortcoming the pleading might have had was waived by Appellant since he did not object nor raise any question until his motion to correct error. We therefore see no error meriting reversal.

### III

Appellant claimed he was unduly prejudiced by testimony of State's witnesses, particularly Kern Peak and Roy Goree, regarding the shooting incident between himself and Walter Goree which ended in Goree's death. There was also reference to this incident in the opening statement of the prosecutor and reference to it in closing statements by both parties. There was no objection by Appellant at any time regarding reference to the shooting incident. In fact, it was freely discussed by witnesses and was the subject of extensive cross-examination by Appellant's counsel. Appellant further claims he received ineffective assistance of counsel because his attorney allowed this testimony without objection.

The State claims Appellant waived the issue by failing to object and, in fact, by taking part in producing this evidence, citing *Murray v. State* (1985), Ind., 479 N.E. 2d 1283. Because of the unusual circumstances here, we feel the issue requires closer inspection and decline to resolve it on the basis of waiver.

Evidence is relevant if it is material to an issue in the case or if it logically tends to prove or disprove some issue of fact. If a fact tends to complete the story of the events in question, it is admissible into evidence even though it has the effect of indicating defendant committed another crime or a prejudicial act of violence. Relevant evidence is not inadmissible merely because it is prejudicial. The trial court is accorded wide latitude in determining the probative value of evidence and its prejudicial impact. *Henson v. State* (1984), Ind., 467 N.E.2d 750, 754; *Smith v. State* (1984), Ind., 465 N.E.2d 702, 705.

■ While the shooting incident was an integral part of the events of that evening, it was not necessary for the State to produce evidence of the shooting in order to prove its case on the charges against Appellant. All witnesses, including Kern, Peak, and Roy Goree, who were club members with Appellant and the deceased and who were also charged with the same crimes Appellant faces here, freely testified about the arrangements made to take part in a gambling operation and the selling of alcoholic beverages without a permit. The local police testified Appellant did not have a permit to carry a pistol. There was testimony that Appellant was seen with the pistol he used to shoot Walter Goree that night. Appellant was not charged with homicide. The evidence did tend to reveal that Walter Goree was the first to draw a gun and threaten Appellant. After that point, Appellant, while in the kitchen of the establishment, pulled his gun to meet Goree's attack. Several other persons attempted to calm Goree, but the incident evolved into shooting by both of the parties and the death of Walter Goree. There was some evidence that Appellant fired the first shot. The evidence could also be interpreted to indicate Appellant shot in self defense.

Defense counsel's strategy seemed to be to allow testimony of the shooting incident and attempt to convince the jury that Appellant did not produce a gun until he was threatened by Walter Goree. Appellant's counsel further tried to convince the jury that Appellant was not seen with a gun until he was in a position of being threatened in the kitchen and that he could have obtained that gun from someone else while in the kitchen or from somewhere else, rather than the allegation of the State that he carried it on his person without a permit. Defense counsel attempted to discount the testimony of Roy Goree that Appellant was seen earlier with the gun on his person by attacking the credibility of Roy Goree. The strategy of counsel was to present to the jury that these facts would support the Appellant being seen holding a gun by the witnesses and yet justify finding he was not guilty of carrying a weapon without a permit. We therefore do not find that Appellant was unduly prejudiced by the admission of this shooting incident into the evidence nor do we find counsel to have rendered ineffective assistance to Appellant by adopting this strategy in the face of overwhelming evidence of his guilt of gambling, illegal sale of liquor, and the possession of a handgun on that night. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, *reh. denied* (1984), 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864; *Lawrence v. State* (1984), Ind., 464 N.E.2d 1291, 1294.

### IV

Appellant contends the evidence is insufficient to sustain his conviction for carrying a handgun without a license. The statute defining this crime provides:

> Except as provided in section 2 [35–47–2–2] of this chapter, a person shall not carry a handgun in any vehicle or on or about his person, except in his dwelling, on his property or fixed place of business, without a license issued under this chapter being in his possession.

Ind.Code Ann. § 35–47–2–1 (Burns Supp. 1987).

■ Appellant first argues the State failed to prove he possessed a handgun since neither the actual gun nor a photograph were introduced into evidence. There is no merit to this contention. Even when a gun is not introduced as evidence

the testimony of an eyewitness that the defendant was carrying a pistol in a place other than his dwelling or business and testimony that the defendant did not have a license to carry a handgun on that date is sufficient to sustain a conviction for carrying a handgun without a license. It is not necessary to produce the gun or a photograph into evidence. *See Thomas v. State* (1971), 256 Ind. 309, 268 N.E.2d 609. Several eyewitnesses testified they saw Appellant with the handgun. The police chief of that jurisdiction stated no permit had been issued to Appellant to carry a handgun.

■ Appellant next maintains that since he was on his property or fixed place of business when he was in possession of the gun he is exempt from the licensing provision. The word business is defined as "that which occupies the time, attention or labor, of men for the purpose of profit or improvement, as their principal concern." *Snyder v. Heinrichs* (1944), 115 Ind.App. 129, 131, 55 N.E.2d 332, 333, *trans. denied.* Business is also defined as "a continuous or regular activity for the purpose of earning a livelihood." *Asbury v. Indiana Union Mutual Insurance Co.* (1982), Ind. App., 441 N.E.2d 232, 237. The record, without conflict, shows Appellant was engaged in a gambling operation which is an illegal activity and not a business. Further, the El Bucko Club was owned and operated by Jim Hendricks. Appellant had no ownership in the club nor did he use it as a fixed place of business. Appellant and his accomplices paid Hendricks $100.00 to use the premises that night for their gambling operation. The evidence was sufficient to support Appellant's conviction of carrying a handgun without a license.

### V

■ Appellant raises several issues involving the habitual offender determination but since we find one issue dispositive, it is unnecessary to consider the issues as presented. The evidence presented to the jury was insufficient to sustain the determination that Appellant is an habitual offender. The State did not prove the required statutory sequence of the commission of the two prior unrelated felonies and their relation to the present underlying felony. The necessity of this sequence of proof was set out as follows:

"It is clear from the statute (IC § 35-50-2-8) that to sustain a sentence under it, the State must show that the defendant had been twice convicted and twice sentenced for felonies, that the commission of the second offense was subsequent to his having been sentenced upon the first and that the commission of the principal offense upon which the enhanced punishment is being sought was subsequent to his having been sentenced upon the second conviction."

*Miller v. State* (1981), 275 Ind. 454, 459, 417 N.E.2d 339, 342.

Here, the State put exhibits 45, 46, and 47 into evidence, which clearly documented two prior unrelated felonies in proper sequence as to commission and sentencing. However, not all of the pertinent information from these documents was given to the jury. Appellant did not want certain portions of the documents read to the jury that were not required to satisfy the State's burden and were thought by Appellant to be prejudicial. Thus, the parties agreed on certain portions of the documents for the trial judge to read to the jury.

The documents showed Appellant committed the first felony in 1972, and he was arrested and charged for it in that year. The docket sheet shows Appellant was sentenced for that first felony in 1973. Officer Vaughn testified Appellant was arrested, charged, pleaded guilty, and was sentenced on this first felony charge. Officer Vaughn did not mention a date as to the plea of guilty or sentencing, but exhibit 47, which documented this date, was put into evidence. The trial judge read the agreed on parts of the document to the jury, stating Appellant was convicted and sentenced for this first felony, but not specifying the dates these events occurred. Defense counsel then cross-examined Vaughn as follows:

"Q. Would it be a fair statement, Pug, to say that what you are talking about here occurred fourteen years ago?

A. About 12, 13 years ago.

Q. '72?

A. '72. This is '84 so? '72 from '84. 12 years ago."

This testimony would be sufficient to reasonably imply that all of the events regarding the first felony preceded the sentencing on the second unrelated felony. The documents indicated Appellant committed the second felony in December, 1976. Appellant was arrested on January 13, 1977, and was sentenced on July 12, 1977. However, when the trial judge read the agreed on facts to the jury, he stated the conviction and sentencing occurred in July, 1977, but did not advise the jury of the date of commission of the second felony. Thus, there was no evidence before the jury to prove the commission of the second felony was after the date of sentencing on the first felony. The fact situation is the same as we found in *Clark v. State* (1985), Ind., 480 N.E.2d 555, 560:

> "In the case at bar, the State has not presented any evidence as to the dates of the commission of the alleged prior felony convictions. As a result, there is no way to discern if the alleged prior felony convictions are in their proper statutory sequence. The State only provides evidence of the time of convictions and sentences; this is not sufficient, especially in this case where the four alleged prior felony convictions appear over a period of three years."

Here, we have a period of four to five years with the same shortcomings. There is insufficient proof for the habitual offender finding and it must be set aside. *See Jordan v. State* (1987), Ind., 510 N.E.2d 655, 659–60.

This cause is remanded to the trial court with directions to set aside the habitual offender finding consistent with this opinion. The trial court is in all other respects affirmed.

SHEPARD, C.J., DeBRULER, GIVAN and DICKSON, JJ., concur.