Bobbie Sue WILLIAMS, Appellant,

v.

STATE of Indiana, Appellee.

No. 17S00–8805–CR–483.

Supreme Court of Indiana.

July 31, 1989.

J. Frank Stewart, Angola, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

■ A jury trial resulted in appellant's conviction of Forgery, a Class C felony, for which she received a sentence of eight (8) years, and five counts of Theft, Class D felonies, for which she received a sentence of four (4) years on each count, all of her sentences to be served consecutively. She also was found to be an habitual offender and the trial court imposed a further sentence of thirty (30) years, giving her a total sentence of fifty-eight (58) years, but the court did not articulate which of her sentences was enhanced due to her habitual offender status. The habitual offender status requires the enhancement of one or more of appellant's underlying sentences instead of the imposition of a separate sentence. *Bowens v. State* (1986), Ind., 496 N.E.2d 769.

■ The habitual offender conviction also is defective in that there is no evidence in this record indicating when the prior offenses were committed. The evidence therefore does not satisfy the requirements of the statute. Ind.Code § 35–50–2–8. In order to support the habitual offender charge, the State must not only present evidence as to the dates of the prior convictions but it must also show that the second prior offense was committed after the sentencing on the first offense and that the commission of the instant offense was committed after the conviction of the second offense. There is no such evidence in the case at bar. Therefore, the judgment that appellant is an habitual offender must be set aside. *Youngblood v. State* (1987), Ind., 515 N.E.2d 522, 527.

The facts are: During the summer of 1984, appellant was employed as a legal secretary by John M. Smith, an attorney in Auburn, Indiana. Part of her responsibilities included bookkeeping for the law firm and for various estates handled by Smith. She was authorized to pay bills and sign checks with her name to fulfill her duties. She also collected and handled the mail.

In February of 1986, Smith was notified by telephone that he was delinquent in paying one of his creditors. Soon thereafter he became suspicious of appellant and began investigating the financial records kept by her. Smith, his accountant, and his bank analyzed the financial status of his accounts and those of the estates for which he was responsible. They learned that appellant had failed to pay several of Smith's creditors, and he owed them thousands of dollars. They also learned that appellant signed Smith's name on checks drawn on

the law firm's trust account and deposited the funds into her own account. The investigation revealed that appellant had transferred hundreds of thousands of dollars from various estates and trust funds into other accounts, and then into her own.

In her defense, appellant testified that Smith had borrowed money from her on numerous occasions and the checks made out to her were repayments of these loans. She stated that Smith directed her to pay herself out of the general, trust, or office accounts. She said she was told to sign his name to the checks so that the signature resembled his own. Smith testified that he had borrowed no money from appellant and had no financial relationship with her at all.

■ Appellant argues her forgery conviction is not supported by sufficient evidence. The information alleged that appellant made or uttered a check for $20,275.00 in such a manner that it purported to have been made by John Martin Smith.

The record shows that Peoples Federal Savings and Loan received a letter from Smith's law office advising them that Smith would redeem the certificates of deposit in the Hottell estate and enclosed was a consent to transfer the certificates. Smith testified that he did not dictate the letter, sign it, or authorize appellant to do so. A check was issued to John Martin Smith, Administrator of the Hottell estate. Appellant stamped the back of the check with Smith's name, wrote under the stamp "Adm WWA/Violette Hottell Estate to John Martin Smith Trust Acct 240–439–0" and deposited it in the City National Bank. Smith testified that the withdrawal slip for the certificate of deposit was not signed by him and no one was authorized to sign it on his behalf, nor was appellant authorized to endorse the check or use the stamp of his name.

Appellant testified that she was authorized to sign checks for the estate accounts, she deposited the check in the proper place in the normal course of business, she did not attempt to cash it, and her actions were pursuant to Smith's instructions. Therefore, she concludes that the State failed to prove her intent to defraud under Ind.Code § 35–43–5–2, which defines the crime of forgery.

■ On a claim involving the sufficiency of the evidence, this Court will not reweigh the evidence or judge the credibility of the witnesses. *Marsillett v. State* (1986), Ind., 495 N.E.2d 699. The intent to defraud in a check forgery prosecution may be proven by circumstantial evidence. *Wendling v. State* (1984), Ind., 465 N.E.2d 169. Proof of monetary gain is not required for a forgery conviction. *Flick v. State* (1983), Ind., 455 N.E.2d 339.

The issue of whether appellant's actions were pursuant to Smith's instruction is one of fact for the jury to determine upon assessing the credibility of the witnesses's conflicting stories. We will not invade the province of the jury's function. *Marsillett, supra.* We find the evidence supports the jury's conclusion that appellant cashed the certificate with the intent to defraud Smith, and her forgery conviction is sufficiently supported by the evidence.

Appellant argues the evidence does not support her theft convictions. She claims she was directed to transfer the money into various accounts and into her own by Smith, thus she did not exert unauthorized control over the property.

■ Appellant's conviction of five counts of theft was based upon five checks which were made out to her by herself. The checks were drawn from either the trust account or the Hottell estate account in amounts ranging from $7,500 to $36,000. Appellant claims the payments to her were either loans to her from Smith or repayments by Smith to her for money he had borrowed from her. Smith testified that he neither borrowed money from appellant nor lent money to her. Again, it was the jury's function to determine the credibility of the witnesses. *Id.* We find sufficient evidence exists to support their conclusion that appellant issued the checks to herself without Smith's consent.

■ Appellant contends the trial court erroneously refused her Tendered Instruction No. 1, which in substance instructed the jury that they were exclusive judges of both the law and the facts. However, the trial court did in fact give such an instruc-

tion to the jury, thus there was no error in failing to give a similar instruction tendered by appellant. *Travis v. State* (1986), Ind., 488 N.E.2d 342. The trial court did not err in refusing appellant's tendered instruction.

Appellant alleges the trial court improperly denied a portion of her motion to produce certain documents. Her motion to produce requested the following: 1) bank accounts of John Martin Smith, Attorney at Law; 2) trust account of John Martin Smith, Attorney at Law; 3) bank accounts of John Martin Smith–Barbara Clark Smith (his wife); 4) personal account of Barbara Clark Smith; 5) bank account of Smith Corness, Inc. (Barbara Smith's business); 6) all business records of income expenses of John Martin Smith in his practice of law including client ledger cards, journal sheets, steno book of income and expense, and Paul Revere Insurance reports.

Smith filed a motion to quash, and the trial court conducted a hearing on the motion. The motion to produce was granted as to the first, second, and third requests and denied as to the remaining three as being overbroad. Appellant alleges she was prejudiced because the motion to produce was directed toward her defense that she loaned Smith money for his firm and personal life, and he was broke because he had a lifestyle above his means.

The scope of discovery in criminal cases is within the sound discretion of the trial court. We will not reverse their determination absent an abuse of discretion. *Clark v. State* (1986), Ind., 498 N.E.2d 918.

During the hearing, appellant asserted the discovery requests would help establish her defense that Smith transferred the money into his personal accounts. However, Smith stated that he was prepared to present evidence that the money was transferred from the trust account into appellant's personal account. Also, he stated that he had no control over his wife's personal account or the account of her business and they had no relevance to the allegations against appellant. Smith also stated that he believed request number 6 was overbroad and asked for documents which were either nonexistent, irrelevant, or were costly to locate and reconstruct with the aid of his accountant and bank.

The trial court ruled that the request was overbroad and denied the motion until appellant came up with a more specific request. Appellant did not make a more specific discovery request, nor did she move for a continuance to do so. We find no abuse of trial court discretion in partially denying appellant's motion to produce.

The State cross claims that the trial court improperly suspended appellant's total sentence by fifteen (15) years.

Indiana Code § 35–50–2–2(b)(2) states that a sentence may only be suspended as to that part that exceeds the minimum if the crime committed was a Class C felony and less than seven (7) years have elapsed between the date the person was discharged from probation for a prior unrelated felony conviction and the date the person committed the Class C felony for which the person is being sentenced. Section (b)(3) of that statute states that a Class D felony conviction cannot be suspended except as to that part that exceeds the minimum if less than three years have elapsed between the time the defendant was discharged from probation for a prior unrelated felony and the date of the commission of the present felony conviction.

The record shows that appellant was convicted of forgery in Ohio on April 14, 1982 for which she received a sentence of two to five years suspended and four years probation. She was on probation for her prior conviction in 1985 and 1986 when she committed the crimes which are the basis of the case at bar.

From the suspension imposed, we cannot determine what portion of what sentences are suspended.

This cause is remanded to the trial court for proper sentencing not inconsistent with this opinion.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.