Eartha Mae BURNS, Appellant,

v.

STATE of Indiana, Appellee.

No. 478S59.

Supreme Court of Indiana.

March 26, 1979.

torial misconduct in closing argument; and (3) adequacy of representation of appellant by trial counsel.

The evidence shows that on the morning of March 15, 1977, at about 8:30 a. m., the Radecki Grocery Store in South Bend was robbed by two persons. The small neighborhood store was operated by Lucille Radecki and Anthony Radecki. One of the robbers brandished a handgun and they successfully made off with money and food stamps after confining the Redeckis in a food locker. The Radeckis were released in a short while by a customer who came into the store. The police were immediately notified and provided with a description of the two robbers and the car in which they had driven off.

On the morning of March 17, 1977, the police received a call from Mike's Grocery Store, a small grocery store located a few blocks from the Radecki establishment, that two customers were acting suspiciously. In response the beat officer arrived at Mike's, saw a car parked outside which fit the description of the car used in the Radecki robbery, and saw two persons inside the store who fit the description of the two who had robbed Radecki's. He called for assistance, then approached the two persons inside the store. In a short time he was joined by a detective who arrested them for the Radecki robbery. One of these persons was appellant.

Appellant was transported to the detective bureau, where, on the same morning she was identified in a line-up by Lucille Radecki as one of the robbers, and was subjected to a strip search for evidence which produced food stamps taken in the Radecki robbery. According to the testimony of Lucille Radecki, she first learned that the person whom she had selected in the line-up was a woman when she was told this upon returning to the police station on the evening of March 17th to give a statement.

Paul T. Cholis, South Bend, for appellant.

Theodore L. Sendak, Atty. Gen., Elmer Lloyd Whitmer, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Appellant was charged with the offenses of commission of a felony while armed with a deadly weapon, to-wit: robbery, in violation of Ind.Code § 35–12–1–1; and automobile banditry in violation of Ind.Code § 35–12–2–1. The jury returned verdicts of guilty on both charges and appellant was sentenced on the robbery while armed conviction to a term of imprisonment of twenty years. Appellant raises three issues on appeal: (1) admissibility of evidence obtained by virtue of appellant's arrest; (2) prosecu-

(I)

■ At trial by appropriate objection and on appeal by argument appellant maintains

that the Department of Agriculture Food Stamps taken from her at the station and the testimony of Lucille Radecki as it described her identification of appellant at the line-up should have been suppressed as the fruit of an unlawful arrest. *Wong Sun v. United States* (1963), 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441. Appellant maintains that the officers had no probable cause to arrest her when they did so at Mike's Grocery Store. The legal criteria for a warrantless arrest were set out in *Smith v. State* (1971), 256 Ind. 603, 271 N.E.2d 133:

"The test for probable cause to make an arrest is whether at the time of the arrest the facts and circumstances within the knowledge of the officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent man of reasonable caution in believing that the arrestee had committed or was committing an offense." 256 Ind. at 607, 271 N.E.2d at 136.

The following evidence was presented to meet this test. Anthony Radecki and a customer described the car in which the robbers fled as a regular or compact type, chocolate brown in color. Shortly after the robbery, while looking at mugshots at the police station, Mr. Radecki said the car was possibly a Ford. The customer provided a partial Indiana license plate number as 71 996 or 71 999. The two robbers were described as black males, clean shaven, seventeen to nineteen years of age. One was six foot two or three, thin build with short hair, and his companion was a foot shorter. A description of various items of clothing worn by the robbers was given including the fact that the shorter was wearing loosely fitting clothes and a stocking cap. The detective who actually made the arrests at Mike's store testified that Lucille Radecki had told him that although the shorter one had on a stocking cap, she could see enough of his hair to notice that it was done in braids.

When the beat officer arrived at Mike's grocery he saw a late model Ford Ltd. parked outside with an Indiana plate 71 E 9936. The car was dark copper colored on the bottom with a dark top. He saw the two customers inside and observed that the one was tall and thin, between six foot two to six foot four and his companion was shorter by about a foot. Appellant was the shorter person. The officer approached them and conducted a pat search for weapons and then permitted them to proceed with checking out the grocery items they were purchasing. The detective who later made the arrests then entered the store and explained further what was happening. He noticed that appellant took loose food stamps from her jacket pocket rather than from a book or her wallet and that she had braids sticking out from under the stocking cap she was wearing. In speaking to her he, of course, noticed that she was female and not male, but nevertheless then arrested both persons for the Radecki robbery.

Appellant analyzes these circumstances from the standpoint that the clothing worn by the perpetrators of the Radecki robbery and those worn by appellant and her companion did not match and that appellant was not a man as was reported by the Radeckis. These discrepancies certainly existed, but so also did strong and compelling similarities. The car is an item in point. So also is the fact that appellant and her companion fit the descriptions given in relative size and weight and general appearance. A few items of clothing worn did match the description. Appellant's hairstyle did match the description given and revealed itself in distinctive fashion to the officer as braids appearing from beneath a knitted cap. Appellant wore her clothing loosely and when considered in conjunction with the hair and knitted cap suggests the reason for the failure of the Radeckis to identify the shorter robber as a female person. Further, food stamps were taken in the Radecki robbery, and appellant took loose food stamps from her jacket pocket in the presence of the officers. The combination of these circumstances provided the officers with probable cause to believe that appellant had committed the Radecki robbery. It was, therefore, not error to admit the evidence on this basis.

### (II)

Appellant testified at trial that she had been given the food stamps which were identified as having been taken in the robbery by a man known only to her as Zeko in payment for a ride in the car to a nearby town. During final argument the deputy prosecutor, in comment upon this testimony, said:

"Number three, her story. I don't mean to be flippant, ladies and gentlement, but frankly I have never heard of a food stamp fairy by the name of Zeko."

Appellant contends that this argument was improper and ridiculed her testimony to the extent that she was denied a fair trial.

██ The credibility of witnesses and of the accused as a witness is not an area foreclosed to the prosecutor in making a final summation. *Hubbard v. State* (1974), 262 Ind. 176, 313 N.E.2d 346. However, it is improper for an attorney to assert that a witness should not be believed unless that assertion is based upon reasons arising from the evidence which are also stated. *Craig v. State* (1977), Ind., 370 N.E.2d 880. Here the deputy prosecutor's comment was not based upon matter presented to the jury and was therefore misconduct. However, this improper statement can in no respect be deemed to have placed the accused in a "position of grave peril", *Maldonado v. State* (1976), 265 Ind. 492, 355 N.E.2d 843. It would not have persuaded the jury to any appreciable degree to reject appellant's version of the manner in which she gained possession of the stolen stamps. We, therefore, are not required to reverse the conviction on this issue.

### (III)

██ Appellant contends that she was denied the effective assistance of counsel at the trial level when counsel during the second and final day of trial failed to move for a continuance to procure an alibi witness. This allegation was contained in the motion to correct errors and a hearing was held thereon and the motion was overruled. Appellant presented an alibi defense supported by her own testimony and that of two witnesses, Linda Seward and Earl Richmond, based upon her presence in the county courthouse at the time of the Radecki robbery. During pre-trial conferences with trial counsel appellant identified one James Johnson, by name only, as having been in the courthouse at the time on a support matter and that he had seen her and would so testify. Counsel was especially diligent during the pre-trial period in attempting to locate this witness. He investigated support and case records in the courthouse in an attempt to locate him and on more than one occasion during the conferences with appellant encouraged her to locate him and to enlist the help of friends to find him. Counsel also interviewed three other potential witnesses who were identified by appellant as having seen her in the courthouse on the morning of the crime; however, none of these persons could remember having seen appellant and therefore were not called as witnesses. None of the efforts by counsel to locate Johnson were successful and the case against appellant came on for trial. During the second day of trial, after the prosecution had rested its case, and after the lunch break, during that part of the case when defense counsel was busily engaged in presenting defense witnesses, the following events occurred which appellant described in her testimony at the hearing:

"Q. You saw Mr. Luber after the lunch break, didn't you?

A. Yes, I did.

Q. What happened then?

A. As he was going into the courtroom I stopped him there at the door and told him about Johnson. I passed him the note. He read it and he said he ain't got time to subpoena nobody now, come on."

A friend of appellant had written this note for her and testified at the hearing that the note read as follows:

"Someone is willing to take me to Elkhart to show me the house where James Johnson lives."

At this point in time counsel was called upon to exercise his skill and ability in evaluating the situation and making a

choice on the basis of what was known to him. He knew that Johnson was nineteen or twenty years old and may have been in some kind of support trouble. He had no way of knowing who the "someone" referred to in the note might have been or how reliable their information might be. He had no way of knowing whether the house referred to was a single or multi-unit dwelling or whether Johnson would still be there or living there when he got there. He had no way of knowing whether Johnson, if located, would remember seeing appellant at the courthouse at the critical hour or if he would be willing to so testify. Realistically viewed, appellant's communication to counsel did not increase the likelihood very much that additional alibi evidence could now be procured and within a reasonable period of time. Under these circumstances it is clear that defense counsel was not ineffective by reason of his limited response to appellant's message. The presumption that counsel adequately investigated and executed appellant's alibi defense has not been overcome. *Magley v. State* (1975), 263 Ind. 618, 335 N.E.2d 811; *Jones v. State* (1974), 262 Ind. 159, 312 N.E.2d 856.

The conviction is affirmed.

GIVAN, C. J., and HUNTER and PRENTICE, JJ., concur.

PIVARNIK, J., concurs in result.