**Anthony S. BURRIS, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 482S137.

Supreme Court of Indiana.

Feb. 17, 1983.

Walter E. Bravard, Jr., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Stephen J. Cuthbert, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was charged with and convicted of Murder, Ind.Code § 35–42–1–1 (Burns 1979) and was sentenced to thirty (30) years imprisonment. This direct appeal presents the following issues:

(1) Whether the trial court erred in sending the final instructions into the jury room.

(2) Whether the trial court erred in failing to instruct the jury upon the offenses of Battery and Criminal Recklessness, as lesser included offenses of the offense charged.

(3) Whether the evidence was sufficient to sustain the verdict.

(4) Whether reference to Defendant's delay in making his claim of "self defense", which reference was made by the prosecutor during final argument, was an impermissible comment upon Defendant's post arrest silence and fundamental error.

\* \* \* \* \* \*

## ISSUE I

After the jury retired to deliberate, they made two requests related to the instructions:

"We need instructions on voluntary and involuntary manslaughter."

"Could we have a definition of sudden heat."

Over objection of the defendant, the trial court sent the Final Instructions into the jury room. These instructions contained definitions of "voluntary" and "involuntary manslaughter" but did not specifically define "sudden heat."

■ Defendant acknowledges our prior holdings that sending the instructions into the jury room is harmless error. However, he urges us to overrule those cases and, alternatively asks that we not apply them, inasmuch as the written instructions were given to the jury after it had commenced deliberations and in response to their specific request for further instructions, rather than prior to the commencement of deliberations. He contends that in *Cornett v. State,* (1982) Ind., 436 N.E.2d 765, we held that sending the instructions to the jury after deliberations had commenced was error per se because such action placed a gloss upon them that was not present when they were read. He also reasons that the trial court's action "tended to encourage the jury to reach a conclusion to the case even though a minority of the jurors might have been inclined to decide the case in defendant Burris' favor.", thereby violating our admonition in *Lewis v. State,* (1981) Ind., 424 N.E.2d 107.

The instructions, however, contained none of the extraneous information which compelled us to reverse in *Cornett.* They did not reveal their sources or bear extraneous markings, and neither did they contain matter which may not have been included in the instructions as they had been read. Neither were they annotated. Unlike *Cornett,* the case at bar does not present a record reflecting that the trial court's action amounted to the giving of an additional instruction after deliberations had commenced. The trial court's action did not run afoul of *Lewis v. State, supra,* or *Cornett v. State, supra.*

We have also considered and rejected Defendant's invitation to find error per se. Defendant notes the potential influence of the "sharp" or "loud" juror armed with the final instructions. Such a juror, however, may very well sway his/her colleagues without such use of the instructions, particularly in light of a standard instruction, which was given in this case:

"The Court further instructs you that it is the duty of each juror to act upon your own individual judgment in determining the issue of guilt or innocence, and you should not carelessly yield this judgment to the other jurors.

"On the other hand, neither should you allow mere pride or stubbornness to prevent you from deliberating and reasoning with your fellow jurors."

Neither do we perceive that the trial court's action unduly emphasized a portion of the case or diverted the jurors from their job of finding the facts. The record discloses no action of the trial court which prompted the jury's request. The request may well have been initiated as a result of discussion of the evidence.

Defendant also claims that he was prejudiced by the trial court's action. He reasons that the jury's request indicated a sentiment by some of the jurors to return a verdict of "guilty" as to a lesser offense, but that such sentiment was "eradicated" when they viewed the final instructions and that the more persuasive among them "apparently" swayed the others. This viewpoint can be sustained only by sheer speculation. Moreover, even if Defendant's scenario of what occurred in the jury room

were accurate, such persuasion could just as likely have occurred had the trial court reread all the instructions in open court, which is the advised and preferred practice.

We find no reversible error upon this issue.

## ISSUE II

■ Defendant next contends that the trial court erred by refusing to instruct the jury upon the offenses of Battery and Criminal Recklessness, as lesser included offenses of the offense charged. However, the record discloses that neither party tendered any written final instructions; consequently, this assignment of error is not available for review. *Begley v. State,* (1981) Ind., 416 N.E.2d 824, 827; *Miller v. State,* (1978) 267 Ind. 635, 641, 372 N.E.2d 1168, 1171.

## ISSUE III

Defendant next challenges the sufficiency of the evidence. He asserts that the evidence proves that he acted under "sudden heat", Ind.Code § 35–42–1–3(b) (Burns 1979) and that, therefore, his conviction for Murder cannot stand.

■ Whether Defendant acted under sudden heat was a question for the jury to resolve. *Dunn v. State,* (1982) Ind., 439 N.E.2d 165, 168.

The evidence most favorable to the State revealed that the decedent, unarmed, drove to Defendant's house upon learning of an altercation, which had occurred earlier that day between Defendant and the decedent's fifteen year old niece, who had been Defendant's girlfriend.

According to witnesses, the two men argued quite loudly. Defendant stood next to the automobile in which the decedent remained, shot him at close range and then entered his house. The decedent attempted to leave but his vehicle collided with another automobile, whereupon Defendant exited his house and removed him from the car. He left the decedent by the car, signaled somebody in a passing automobile which fit the description of his brother's automobile, and departed.

Those events occurred on September 29, 1979, and on September 30, 1979, Defendant moved to Joliet, Illinois, where he stayed until he returned to Indiana on April 30, 1981.

Defendant related a different version of the events. He claimed that the decedent was quite angry and drew a gun and that they struggled by the front door of his house. In the course of the struggle, the gun discharged accidentally, and the decedent returned to his car and attempted to leave. At that point, according to his testimony, Defendant was not aware that the decedent had been shot. The remainder of his testimony concerned the moving of the body from the car and leaving the scene parallels the testimony of the other witnesses.

On appeal, Defendant now proffers a "sudden heat-theory" and asks us to infer the existence of such from several events which, according to his testimony, had occurred prior to the homicide. In addition to relating the aforementioned altercation with Decedent's niece, he had testified that the niece had, on the previous day, assisted her sister in slashing the tires of his automobile. He had also testified that a week or so earlier, Decedent had accosted him and threatened him with a gun. Defendant argues that it should have been inferred from such evidence that he acted out of rage and fear in reaction to such events. The jury, however, could have found that sufficient time had elapsed for such rage to have subsided—for the blood to have cooled. *See Palmer v. State,* (1981) Ind., 425 N.E.2d 640, 645.

It appears that Defendant had questioned the niece about the tire slashing in a very rough manner and he reasons, therefrom, that the decedent, the uncle, was quite angry when he called upon him approximately one-half hour later. He adds that, about a week before the incident, the decedent while brandishing a gun, had threatened to blow his brains out if he did not stay away from his niece. Defendant asserts that he

acted out of terror, in response to such prior threat. The jury was not obligated to believe Defendant's testimony upon these points, *Hooks v. State,* (1980) Ind., 409 N.E.2d 618, 620, which testimony related an accidental shooting and not a case of sudden heat.

The jury could have found beyond a reasonable doubt from the State's evidence that Defendant unlawfully and knowingly killed the decedent as charged in the information.

### ISSUE IV

Lastly, Defendant contends that the prosecutor, in his final argument, referred to his post arrest silence, thereby violating the proscription of *Doyle v. Ohio,* (1976) 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91:

> "The first time this "self-defense or man comes in the house" story comes about after April thirtieth (30th), 1981. That is a year and a half from the time—really it seemed longer than that, from the time that Joseph Alexander was murdered."

The record discloses that Defendant made no objection to the statement, but Defendant claims fundamental error as defined in *Nelson v. State,* (1980) Ind., 409 N.E.2d 637, 638.

 We perceive no harm to Defendant inasmuch as he admitted, on cross-examination, that he had first told his version of the incident to a clergyman on April 30, 1981, the date of his arrest. Additionally, on September 30, 1979, the day after the shooting, Defendant had telephoned a police officer whom he knew and that officer had related the contents of the call without objection:

> "A. When I got the telephone call and I recognized Mr. Burris' voice, we didn't go into any detail about the incident. I advised him that it would be best for him to come in and come downtown with me and talk about the incident. The detective assigned to the case needed to get a statement to his side of the story at which time Mr. Burris stated to me he really didn't know why anyone was looking for him he hadn't harmed anyone.

He did state that he did remove the victim out of the car. *He had visually observed someone else standing and talking with the victim or evidently shoot the victim and subsequently gave chase.* That's why he was not on the scene at the time. I had stated to Mr. Burris at that time that if that was true, in fact, what had happened, that that's what they needed to hear downtown." R. at 258–59 (emphasis added).

This portion of the record reveals that Defendant had made a prior inconsistent statement to which the Prosecutor could properly refer in his argument, *Burns v. State,* (1979) 270 Ind. 512, 515, 387 N.E.2d 442, 445, and to which *Doyle v. Ohio, supra,* does not apply. See *Anderson v. Charles,* (1980) 447 U.S. 404, 409, 100 S.Ct. 2180, 2182, 65 L.Ed.2d 222, 227.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.