**Mark HUDSON, Appellant**
**(Defendant Below),**

v.

**STATE of Indiana, Appellee**
**(Plaintiff Below).**

No. 684S222.

Supreme Court of Indiana.

Sept. 3, 1986.

Susan K. Carpenter, Public Defender, Kathryn Kelley, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

Mark Hudson appeals his conviction for burglary, a class B felony, Ind.Code § 35–43–2–1 (Burns 1979 Repl.). The trial court imposed a sentence of twelve years. Appellant raises seven issues in this direct appeal:

(1) Whether the trial court improperly permitted evidence of prior criminal conduct;

(2) Whether the trial court erred by permitting the State to impeach a co-defendant on a collateral issue;

(3) Whether the flight instruction was a confusing and incorrect statement of the law;

(4) Whether the prosecutor's questions during the trial and comments during closing arguments constituted misconduct;

(5) Whether trial counsel's assistance was ineffective;

(6) Whether the cumulative effect of the foregoing denied appellant his right to a fair trial, and

(7) Whether the trial court erred by enhancing appellant's sentence using improper considerations and without giving specific reasons.

These are the facts which tend to support the trial court's judgment. On February 26, 1981, William D. Jean, age 77, and his wife left their home at 11:20 a.m. Their house was secure and the back door was locked with a bolt. When they returned home at 1:30 p.m., there were pry marks around the back door and the interior of the house had been ransacked. A gold watch, three dollars, and a safe with its contents were missing. The safe weighed three hundred pounds empty.

George Jean, the victim's son, lived next door approximately one-quarter mile to the south. He could see his father's house very clearly on this bright, sunny winter day. The son observed an unfamiliar car parked outside his father's house; the car doors and trunk were open. When he arrived at his father's house, he saw two men exit the house carrying a safe and then place it in their trunk. When George Jean confronted these men, co-defendant Doren Martin fled in George's truck. Another neighbor, Allen Thatcher, was driving by when Martin fled. The son asked him to follow the truck. Thatcher pursued the truck relentlessly and finally Martin surrendered to him.

Deputy Sheriff Paul Evans received a dispatch which described the second burglar, who had fled on foot. Evans searched the vicinity and subsequently apprehended appellant. Evans identified appellant in court as the man he apprehended and George Jean identified appellant in court as one of the burglars. Deputy Sheriff Richard Eagler obtained custody of appellant from Evans.

## I. Evidence of Prior Misconduct

Appellant argues that the trial court improperly permitted testimony that he was involved with drug acquisitions, and thus denied him a fair trial. He maintains that evidence of criminal conduct not reduced to

a conviction may not be used to impeach a witness's credibility or prove guilt.

Co-defendant Doren Martin testified as a defense witness. He stated that appellant came to his house on the morning of the burglary to collect on a debt. Martin told appellant that he needed to drive to a friend's house to collect the money. Appellant and a third man, Dave McDougall, accompanied Martin. Appellant did not know, Martin testified, that he and McDougall planned to commit a burglary. During cross-examination the prosecutor inquired:

Q. When Hudson came over to your house, what was he coming over for?

A. To collect some money.

Q. How much?

A. $300.00.

Q. You owed him $300.00?

A. Yes, sir.

Q. Why'd you owe him $300.00?

A. For some pot.

Q. Pot. He sold you pot?

A. Yes, Sir.

Q. And, by pot, what do you mean?

A. He sold me two quarter-pounds of pot.

Q. Two quarter-pounds of pot. You a big smoker?

A. No, sir.

Q. What are you?

A. A person.

Q. Were you going to sell that pot?

A. Yes, sir.

Q. Then you're a dealer, right?

A. Yes, sir.

Defense counsel later questioned appellant about the events which transpired on the morning of the burglary:

Q. Okay. On February 26th, I believe he [Doren Martin] said that you'd came over to his house. Is that correct?

A. Yes.

Q. Okay. And, why did you go there?

A. Well, he owes me some money.

Q. Okay. Any, what—why did he owe you money?

A. I fronted him some reefer.

Q. Okay. And, reefer, for the Jury is what?

A. Marijuana.

Q. Okay. Now, when you say fronted him, you mean you gave him some marijuana?

A. Yes, I've done it before.

The prosecutor then cross-examined appellant about his employment record:

Q. Anything else?

A. Then Indiana Women's Clinic.

Q. Indiana Women's Clinic. Now, what would be the Indiana Women's Clinic?

A. It's an abortion clinic.

Q. And, what was your job?

A. When I worked at Indiana Women's Clinic, I worked—I drew blood, plus I done blood grouping, and done urine samples.

Q. Mm-hmm. Did you have access to any drugs?

A. When I was at the Women's Clinic, yes.

Q. How about the other places, Wishard and Community?

A. You could get it, but it would be a little difficult at times.

During closing arguments the prosecutor and defense counsel referred to the drug testimony. The State commented on Hudson's testimony that he left the victim's residence because he had to hide some marijuana. The prosecutor told the jury that it may consider other offenses when evaluating the credibility of Hudson and Martin but that it could not infer that defendant was guilty of this offense simply because he had committed others. Defense counsel similarly referred to this testimony during his closing arguments and informed the jury that possession of marijuana does not render a person guilty of burglary. Defense counsel also reminded the jury of discussion during voir dire about using evidence of earlier crimes or wrongful acts to find defendant guilty of the present crime and noted there was an instruction that doing so was improper.

██ Prior acts of misconduct are generally inadmissible in a criminal prosecution to establish guilt or the accused's propensity to commit crime. *Kalady v. State* (1984), Ind., 462 N.E.2d 1299; *Malone v. State* (1982), Ind., 441 N.E.2d 1339; *Miller v. State* (1982), Ind., 436 N.E.2d 1113. However, evidence of an unrelated criminal act which is relevant to a fact in issue is not inadmissible merely because it tends to show guilt of another crime. *Tabor v. State* (1984), Ind., 461 N.E.2d 118. Under the theory of *res gestae*, evidence of events near in time and place to the charged crime is admissible to complete the story of the commission of the charged offense, notwithstanding that this evidence includes testimony about uncharged offenses. *Tacy v. State* (1983), Ind., 452 N.E.2d 977; *McCormick v. State* (1982), Ind., 437 N.E.2d 993.

██ In this case, the prosecutor properly questioned Martin about the circumstances under which appellant came to his house on the morning of the crime. Martin had already testified on direct that appellant came to his house to collect a debt and that the ostensible purpose of the car ride was to collect money to discharge his indebtedness. Questioning Martin about the nature of the debt was legitimate cross-examination about his version of the events.

██ While the prosecutor's continued questioning about whether the co-defendant was a drug dealer exceeded the scope of *res gestae*, it was permissible to establish a motive for the burglary. Moreover, questioning appellant about his past employment record was within the scope of preliminary questions. Any references to his access to drugs was within the scope of permissible cross-examination. (See, Issue IV, *infra*, Co-Defendant's Fear of Appellant). Finally, during closing arguments it is proper to discuss the evidence and all reasonable inferences therefrom. *Brumfield v. State* (1982), Ind., 442 N.E.2d 973. The prosecutor may also comment on the credibility of witnesses during closing arguments, provided the assertions are based upon reasons derived from the evidence presented. *Beard v. State* (1981), Ind., 428 N.E.2d 772.

## II. Impeachment on a Collateral Issue

Hudson argues that the trial court allowed improper impeachment by permitting the State to cross-examine Martin on his filing of a petition for post-conviction relief. He maintains that Martin's filing of a post-conviction petition was a collateral issue and irrelevant for purposes of impeaching Martin's credibility.

During direct examination, Martin testified about the events which occurred on the morning of the burglary. He said that appellant came to his house that morning seeking repayment for credit extended. Martin and McDougall had planned to commit a burglary that morning. They told appellant that they were merely going to collect money from a friend in order to repay Hudson and invited appellant to accompany them. Martin testified that he and McDougall committed the burglary by themselves while appellant waited outside in the car. Martin acknowledged that he had not mentioned McDougall's role in the burglary when he testified at his guilty plea hearing because he feared that McDougall might harm his family.

The State cross-examined Martin about discrepancies between testimony he gave while pleading guilty to the offenses which arose from this burglary and his testimony during direct examination. Appellant argues that the following colloquy between the prosecutor and Martin indicates that the State's questioning focused on a matter collateral to this case:

Q. And, on that date did you know what your legal rights were?

A. I was told what they were, yes, Sir.

Q. Mm-hmm. Did you know what your legal rights were when the Judge told them to you?

A. I mostly understood them, yes, Sir.

Q. Okay. Did you know that you were entering a plea of guilty to robbery, burglary and theft?

A. Yes, Sir.

Q. At a later date did you appear here and enter your plea of guilty to habitual offender?

A. Yes, Sir.

Q. And, on that date did you know what was going on?

A. Yes, Sir.

Q. Did you know what your rights were?

A. I understood them mostly, yes, Sir.

Q. Okay. And, did you know that you were saying, in fact, that you were a habitual offender?

A. Yes, Sir.

Q. Did you believe that anyone violated your rights at that time?

A. No, Sir.

Q. You ever made any statements to the contrary?

A. No, Sir.

Q. Going to have you look at this document that's been filed in your case. Seen that?

A. Post Conviction Relief, yes, sir.

Q. Mm-hmm. Did you make that statement, your plea was not entered knowingly and intelligently?

A. I haven't had too much of occasion to talk to the lawyer that filed this.

Q. Well, I'm not asking you that. I'm asking you whether you made that statement?

A. My lawyer made that statement, yes, she did.

Q. Is this your signature at the end of that document?

A. Yes, Sir.

Q. So, didn't you, in fact, make that statement?

A. Yes, sir.

Q. So, you're telling this Jury right now that what you said back on February 27th was—should all be thrown out because you didn't know what you were doing that day?

[Defense counsel's objection to this line of questioning was overruled. The trial court instructed jury that the witness could answer the question for sole and limited purpose of testing his credibility as to whether or not he has or has not made inconsistent statements.]

Q. Could you answer my question, please?

A. Would you repeat it, please?

Q. Are you telling this Jury you didn't know what you were doing on February 27th when you were here in Court or on any of the other times you were here in Court?

A. I'm telling this Jury that I don't feel like I knowed it as well as I should have because there was some things I didn't understand, yes, Sir.

Q. Is that why you didn't tell the whole truth on that date?

A. I had my reasons for not telling the whole truth that day.

The State argues that the prosecutor's cross-examination served as a foundation for impeachment of the witness by showing his prior inconsistent statements about the crime, particularly the participation of a third person, made at his guilty plea hearing. We view the questioning as unnecessary. The prosecutor may question a witness to establish the foundation for the introduction of prior inconsistent statements. However, a post-conviction petition filed on the basis that the guilty plea was not entered intelligently and voluntarily has no relevance to whether Martin gave prior inconsistent statements at the guilty plea hearing when establishing the factual basis for the plea and the events surrounding the crime.

Collateral matters cannot be made the basis for impeachment. *Smith v. State* (1983), Ind., 455 N.E.2d 346. A party is generally bound by the witness' answer on cross-examination to a question relating solely to a collateral matter. Therefore, the prosecutor should have ceased questioning on this subject when Martin stated

that he had not made any statements to the contrary. *Pollard v. State* (1950), 229 Ind. 62, 94 N.E.2d 912; *Fleenor v. State* (1928), 200 Ind. 165, 162 N.E. 234. However, appellant has not shown how his substantial rights were prejudiced. *Rebstock v. State* (1983), Ind., 451 N.E.2d 1083. We conclude that only harmless error arose from this questioning.

### III. Flight Instruction

Appellant argues that the following flight instruction was a confusing and incorrect statement of the law:

> The flight of a person immediately after the commission of a crime, if proved, is not evidence of guilt. It may, however, be considered as some evidence of guilty intent.

Appellant acknowledges that flight may be considered as circumstantial evidence of guilt or consciousness of guilt. He maintains that this instruction was a confusing and incorrect statement of the law because the first and second sentences are contradictions. The instruction first recites that flight is not evidence of guilt and then asserts that flight may be considered as some evidence of guilty intent.

He further contends that since burglary is a specific intent crime and "guilty intent" was not defined, the jury may have incorrectly interpreted "guilty intent" as equivalent to the element of specific intent. He maintains that the jury may have believed proof of flight alone constituted sufficient proof of specific intent to commit a felony.

■ In *Hansford v. State* (1986), Ind., 490 N.E.2d 1083, the jury was charged that escape from jail is "not proof of guilt [but] is evidence of consciousness of guilt and thus of guilt itself." *Hansford*, 490 N.E.2d at 1092. Darrell Hansford had similarly argued that the instruction was an incorrect statement of the law. We noted that the instruction in *Hansford* had previously been approved by this Court. We then reviewed all the instructions to determine whether the challenged instruction was confusing. Instructions should be read as a whole and the impact of the entire charge should be considered in determining reversible error. *James v. State* (1976), 265 Ind. 384, 354 N.E.2d 236.

■ In this case, the jury was also instructed on the difference between direct and circumstantial evidence and the use of each in drawing appropriate inferences from the whole of the evidence. Although the flight instruction could have been clearer, the whole charge adequately informed the jury that it could infer consciousness of guilt from the evidence of defendant's flight, but could not consider flight as sufficient evidence to prove an element of the crime. The jury was correctly charged that defendant's flight did not constitute proof of guilt but could be considered by the jury as circumstantial evidence of consciousness of guilt.

### IV. Prosecutorial Misconduct

Appellant argues that instances of prosecutorial misconduct deprived him of a fair trial as follows:

> (1) Questioning the defendant and co-defendant about their drug transactions was prejudicial and designed to inflame the passions of the jury;
>
> (2) Repeated questions to co-defendant about his alleged fear of defendant in light of witness's denial was prejudicial and lacked probative value;
>
> (3) State improperly raised inferences about appellant's previous employment, and;
>
> (4) The prosecutor's remarks during closing arguments on the credibility of witnesses and the weight accorded their testimony were improper.

■ To determine whether the prosecutor has engaged in misconduct during the trial, this Court conducts the dual analysis enunciated in *Maldonado v. State* (1976), 265 Ind. 492, 355 N.E.2d 843. We first determine whether the prosecutor engaged in misconduct by referring to case law and the Code of Professional Responsibility. If misconduct has been established, then we must determine whether the mis-

conduct, under the circumstances, placed the defendant in a position of grave peril to which he should not have been subjected. The gravity of the peril is determined by considering the probable persuasive effect of the misconduct on the jury's decision, not the degree of impropriety of the conduct. Under this standard, we find that Hudson has not established that prosecutorial misconduct occurred during the trial.

### Evidence of Drug Involvement

Appellant's and co-defendant's involvement with drugs was revealed during the trial in the context of the events which transpired during the morning of the burglary. Their testimony indicated that appellant extended credit to co-defendant for a drug transaction. Appellant also testified that he had access to drugs at various positions of former employment. As indicated above, we regard these as subjects of proper questioning.

### Co-defendant's Fear of Appellant

Co-defendant Martin acknowledged during direct examination that he had not mentioned at his guilty plea hearing that McDougall participated in the crime and asserted that there were three people present rather than two. He explained that this omission was based upon his fear that McDougall might harm his family.

During cross-examination the prosecutor asked whether Martin also had reason to fear Hudson:

Q. Tell me, Mr. Martin, are you afraid of Mark Hudson?

A. No, Sir.

Q. You're not?

A. No, Sir.

Q. You ever made any statements to the contrary?

A. Yes, sir.

Q. When?

A. Talking to you and Mr. Fountain.

■ The scope of permissible cross examination generally extends to all phases of the subject matter covered in direct examination and may include any matter which tends to elucidate, modify, explain, contradict, or rebut testimony given in chief by the witness. *Dean v. State* (1980), 272 Ind. 446, 398 N.E.2d 1270. In this case, the witness' fear of a third party was the reason offered during direct examination to explain why he gave a different version of the number of participants at his guilty plea hearing. The questioning during cross examination was proper to contradict or rebut a statement made during direct examination.

### Appellant's Employment

When Martin was cross-examined, he stated that appellant worked for a gold shop and affirmed the prosecutor's comment that consumers can sell gold and silver in such a shop. Later, the State cross-examined appellant about his previous employment. Hudson testified that he worked part-time at an antique and gold shop. Hudson also testified that he had previously worked as a pathologist's assistant at a hospital and that he had been employed by a women's clinic. When the prosecutor asked whether he had access to drugs when he worked at the hospital and the clinic, defendant responded affirmatively.

Evidence is relevant when it logically tends to prove a material fact or sheds any light on the guilt or innocence of the accused. *Cox v. State* (1985), Ind., 475 N.E.2d 664. Appellant's employment at a store which bought and sold gold items was relevant to his ability to sell the gold items stolen during the burglary. The prosecutor's questions were proper.

### Closing Arguments

During closing arguments defense counsel told the jury that the commission of prior acts of misconduct does not establish that defendant is guilty of the charged crime. He then warned the jury:

Now, there's an old prosecutor's trick to say, well, you're a bad person and you had marijuana, you had a lot of it, and, therefore, Ladies and Gentlemen, you're guilty of burglary.

The prosecutor commenced his final rebuttal argument with the following challenged commentary:

> After all that, I guess I'm a pretty evil guy with all these tricks I'm pulling. I'm not going to get into namecalling matches.

While these comments did not add much to the parties' legal arguments, they hardly rise to the level of reversible error. *Rohlfing v. State* (1949), 227 Ind. 619, 88 N.E.2d 148. Appellant also claims that the prosecutor's comments on the credibility and the weight accorded to witnesses' testimony constituted misconduct:

> And, I'd ask you—we're getting down in this case to weighing the credibility of the witnesses. On one hand we've got George Jean, Alan Thatcher and those other officers. Over her we have two men who've been convicted of prior felonies. And, as Mr. Hunt [defense counsel] has told you, you can't use that just to believe that they're guilty of this offense because they committed others. But, you can consider it in determining their credibility. These men have been convicted of felonies. He talks about those other offenses. The marijuana. I was not the one who first brought up the marijuana. I wasn't the one who brought up that he delivered two pounds of marijuana to Doren Martin to deal. He brought it up. These guys have committed some offenses. These guys know what's going on. Over here we have two private citizens, three police officers, the prosecutor, myself, who's integrity has been questioned. [Defense counsel interjected an objection at this point. The court again instructed the jury that the comments of the attorneys are not evidence.]

The prosecutor may comment on the credibility of witnesses during closing arguments when the assertions are based upon evidence presented to the jury. *Burns v. State* (1979), 270 Ind. 512, 387 N.E.2d 442. Any weak or illogical reasons advanced by the prosecutor for disbelieving a witness are a matter for the jury to weigh. *Hubbard v. State* (1974), 262 Ind. 176, 313 N.E.2d 346. In this case, the prosecutor urged the jury to discredit the testimony of appellant and co-defendant because they had been convicted of prior felonies and were involved with drugs. Both reasons urged by the prosecutor were based upon testimony presented during the trial. Moreover, the trial court immediately admonished the jury that comments of the attorneys were not evidence and the jury was charged that it was the exclusive judge of the credibility of witnesses and the weight accorded to their testimony.

## V. Ineffective Assistance of Counsel

Appellant's argument of ineffective assistance of trial counsel is predicated upon the following claims:

> (1) counsel's failure to object to references made about defendant's flight from the scene of the crime and his drug usage;
>
> (2) counsel's failure to object to impeachment of co-defendant based upon burglaries merely contemplated;
>
> (3) counsel's failure to object to State's exhibit 16 when the item had not been connected to defendant;
>
> (4) counsel's failure to object to questions about co-defendant's alleged fear of defendant, and,
>
> (5) counsel's questioning appellant on matters previously deemed suppressed which opened the door for defendant's own impeachment.

To succeed on an ineffective assistance of counsel claim appellant must satisfy the performance-prejudice standard outlined in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Appellant must show that counsel did not give reasonably effective assistance as measured by the prevailing professional norms and that counsel's deficient performance not only prejudiced the defense but undermined the reliability and fairness of the proceeding. *Stanley v. State* (1985), Ind., 479 N.E.2d 1315.

■ This Court will not speculate about what may have been the most advantageous strategy in particular cases. A deliberate choice made by counsel for some tactical or strategic reason does not establish ineffective assistance of counsel. *Owens v. State* (1984), Ind., 464 N.E.2d 1277. Moreover, the decision to forego perfunctory objections having little chance of success or no direct or substantial relationship to the main thrust of the defense is within the realm of reasonable trial strategy. *Bevill v. State* (1985), Ind., 472 N.E.2d 1247. The appellant must show that counsel's alleged failure to act or his choice of strategy harmed the cause. *Kelly v. State* (1983), Ind., 452 N.E.2d 907. When an ineffective assistance claim is predicated on counsel's failure to interpose an objection, appellant has the burden to show that a proper objection would have been sustained by the trial court. *Kimble v. State* (1983), Ind., 451 N.E.2d 302. Hudson has not established that defense counsel's failure to object harmed his cause or that objections would have been sustained.

*Flight From the Scene and Drug Participation*

■ Appellant claims that counsel's failure to object to testimony about his involvement with drugs and his flight from the crime scene resulted in prejudice. The failure to object to admissible testimony does not constitute ineffective assistance. Moreover, it appears that counsel deliberately chose to allow testimony about appellant's involvement with drugs. Counsel's strategy apparently hinged on the inference that appellant's honesty in admitting the uncharged crimes would enhance the credibility of his testimony that he did not participate in this burglary.

*Burglaries Contemplated by Co-defendant*

Martin's car was left behind at the crime scene when he fled in the victim's truck. When the police inventoried this car they found a green notebook in the glove compartment which had a map that provided directions to a house in the vicinity of the victim's house.

During direct examination Martin identified State's exhibit 16 as his green notebook which contained written directions to the home of Bud Brownsome, who owned a car lot in Indianapolis. When they arrived at the Brownsome residence, they determined someone was home and thus proceeded to the Jean residence.

During cross examination Martin testified that he had chosen the Brownsome house as the target of the burglary because he believed that anyone who owned a big business was likely to have money at home. The prosecutor then directed Martin's attention to another page in the green notebook which had the name "Spencer" written at the top of the page. Martin responded that directions to Spencer's house were on that page. Martin was asked about additional notations in his green notebook, such as "Stucks Oil Company, in file cabinet, locked bottom door and cash door, Saturday night." Martin responded that someone told him about a place where they kept money and that he planned to commit a burglary if it sounded right.

■ Testimony about criminal acts which a witness and the defendant may have contemplated is generally inadmissible. *Wilson v. State* (1982), Ind., 432 N.E.2d 30. The testimony in the case at bar, however, concerned criminal activity contemplated by the co-defendant, not by appellant. Appellant has not demonstrated how he was prejudiced by counsel's failure to object to testimony that the co-defendant had contemplated additional burglaries.

*Admission of State's Exhibit Sixteen (Green Notebook)*

■ An item of physical evidence may not be admitted until the foundation witness identifies the item as being similar to the item associated with the crime and there is evidence that the instrumentality is connected to defendant and the commission of the crime. *Hooper v. State* (1983), Ind., 443 N.E.2d 822. Appellant claims that the

notebook was not connected to him. However, the State does not have to establish that the evidence was positively in the possession of the accused in order for the instrumentality to be logically connected with the accused and admissible. *Malott v. State* (1985), Ind., 485 N.E.2d 879. Rather, the physical evidence need only constitute a small but legitimate link in the chain of evidence connecting appellant with the crime. *Candler v. State* (1977), 266 Ind. 440, 363 N.E.2d 1233. The notebook was properly admitted as evidence to faithfully reconstruct the events surrounding the crime. *Cf. Martin v. State* (1986), Ind., 490 N.E.2d 309. Any inconclusive connection with appellant affects the weight, not the admissibility. *Carman v. State* (1979), 272 Ind. 76, 396 N.E.2d 344.

### Co-defendant's Fear of Appellant

During direct examination, co-defendant Martin explained that he did not state at his guilty plea hearing that it was McDougall and not appellant who participated in the burglary because he feared that McDougall might harm his family. The State asked Martin whether he was afraid of appellant. Martin stated that he had no reason to fear appellant and denied making any prior statements to the contrary. The State's questioning that Martin might also be afraid of Hudson was within the scope of crossexamination.

### Impeachment Based Upon Matters Suppressed

■ Appellant also bases his ineffective assistance claim on questions posed by counsel during direct examination which provided the basis for the State to impeach him on matters previously deemed suppressed. Hudson made several statements when he was apprehended by Deputy Evans prior to an advisement of *Miranda* rights. These statements indicated that Hudson hurt his hand because he attempted to grab onto a truck and that the truck "came from the next road down," presumably the road that led to the victim's house. The trial court granted the motion to suppress based upon *Miranda*. During direct

examination appellant gave testimony inconsistent with the suppressed statements (namely, he hurt his hand on a barbed wire fence and did not see a truck leave the premises). The Court permitted the State to question Hudson about these statements.

Even if this was error, we find it to be harmless. The inference derived from Hydson's statements is that he was present at the crime scene. Hudson admitted his presence when he testified but denied his participation in the burglary. Both of appellant's explanations were consistent with the strategy of admitting presence but denying participation.

### VI. Fair Trial

■ Appellant argues that the cumulative effect of the foregoing errors denied him his right to a fair trial. Alleged errors which do not present a single basis for reversal do not gain the stature of reversible error when viewed *en masse*. *Napier v. State* (1983), Ind., 445 N.E.2d 1361.

### VII. Sentencing Errors

Appellant's argument on sentencing errors is predicated upon two claims. First, prior criminal history and a consistent pattern of criminality are not specific findings to support a sentence enhancement. Second, the enhancement was based upon consideration of improper aggravating factors. Specifically, the court referred to two prior burglary convictions when appellant had only one prior conviction for burglary.

At the sentencing hearing, the court noted that the present offense constituted appellant's third burglary conviction. The court stated that it would be a "travesty on justice ... to follow the statutorily prescribed penalty ... [because] it would deprecate the seriousness of repeat offenders." The court found aggravating factors in "the previous history and a rather consistent pattern of criminality."

A charge had been filed alleging that Hudson was an habitual offender citing two prior convictions for burglary. The

State subsequently filed a motion to dismiss the habitual offender charge which was granted by the court. However, during direct examination Hudson admitted that he had been convicted in 1974 of first degree burglary and in 1979 of conversion.

 Consideration of a defendant's past criminal record is one of the statutory criteria designated for a finding of aggravating circumstances. *Brim v. State* (1984), Ind., 471 N.E.2d 672. A defendant's past criminal record includes his prior convictions. The trial court may also properly consider evidence presented at trial when making its sentencing determination. *Page v. State* (1981), Ind., 424 N.E.2d 1021; *Harris v. State* (1979), 272 Ind. 210, 396 N.E.2d 674. The sentencing court did not err by basing its determination of criminal history on appellant's admissions during trial of prior convictions. Even though the sentencing judge inadvertently referred incorrectly to the nature of one of appellant's prior convictions, this does not detract from the finding of a past criminal history.

Judgment affirmed.

GIVAN, C.J., and DeBRULER, PIVARNIK, and DICKSON, JJ., concur.